748 A.2d 1078

**Leslie Wayne PRINCE**

v.

**STATE of Maryland.**

**No. 454, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

March 31, 2000.

---

14. The court used dashes and the abbreviation "N/A," for "non-applicable."

Bradford C. Peabody, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Gary E. Bair, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Jack Johnson, State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Submitted before DAVIS, KENNEY and JAMES S. GETTY, (retired, specially assigned), JJ.

DAVIS, Judge.

Leslie Wayne Prince, appellant, was convicted by a jury in the Circuit Court for Prince George's County (Nichols, J.) of child abuse. He was sentenced to prison for fifteen years.

The sole question presented by appellant on appeal is:

Did the trial court err in ruling that the child abuse victim's statements to a social worker and a psychologist were admissible?

At a pretrial hearing held on the issue of the admissibility of the child abuse victim's verbal statements to a social worker and a psychologist, the evidence showed that a report alleging "physical abuse" of Myeshia M. (Myeshia), age seven, was forwarded to the office of Jennifer Karl, a licensed graduate social worker. Myeshia was transported to the agency from the police station on January 6, 1998. She was having a great deal of difficulty walking, and was walking on the sides of her feet. According to Karl, Myeshia told her that she had been "hurt" by "Mr. Prince," her mother's boyfriend. Karl stated, "The child had hundreds of puncture wounds all over her body, and she said that Mr. Prince caused those." On the night of January 5, 1998, Myeshia was doing her homework in the living room and her mother warned her that Prince would be "mad" that she had not finished her homework.

When Prince arrived, Myeshia was wearing slippers and a nightgown and she was still doing her homework. He was angry, he yelled at her, and he dragged her outside to his van. With a roll of duct tape, Prince sealed her mouth and taped her wrists and legs together. Myeshia said that he began "sticking" her with a "nail," and laughing. He dragged her back into the apartment, placed her in a tub of cold water, and scrubbed her down. Prince then brushed Myeshia's teeth with some kind of powder that "tasted bad and burned." She went back to the living room table to finish her homework and she sat there all night until the police came in the morning.

At the time when Karl first saw her, when she took her to the hospital, Myeshia had hundreds of little red "pinpoint marks," all over her body; some were still bleeding. Myeshia kept talking about her fear of seeing Prince, and she had great difficulty walking or sitting down.

Nancy Davis, a licensed Maryland psychologist, saw Myeshia ten times. She received data from Karl, did an initial assessment, and then began treating Myeshia for "flashbacks."

Davis found that Myeshia could tell the difference between the truth and a lie. Myeshia "seemed to be very open," intelligent, outgoing, and "she wanted to relate to people." She described in detail what "Les" had done to her on the night in question, and on previous occasions.

The State argued that, under the applicable statute—Article 27, § 775 of the Annotated Code of Maryland—the testimony of Karl and Davis as to what Myeshia told them was admissible over hearsay objections.

The court questioned Myeshia in chambers, in the presence of the prosecutor and defense counsel. Then eight years old and in the second grade, Myeshia told the judge she understood that she "might get in trouble" if she "told a lie." She said that she told Karl the truth about something "bad" that her mother's boyfriend, Leslie Prince, did to her. She said that she also told the "truth" to the person described to her by the judge as "the doctor, the psychologist." The court overruled appellant's objections and ruled that the child abuse victim's statements to the social worker and psychologist were admissible at trial.

Appellant argues that such testimony violated his right to confrontation because he was unable to cross-examine the child abuse victim. He posits that, because the statements were admitted under the statute enacted in 1988, they do not fall within a firmly rooted hearsay exception. The statements, argues appellant, lack "particularized guarantees of trustworthiness," and are therefore inadmissible.

Article 27, § 775 provides that certain out-of-court statements made by child abuse victims are admissible in a criminal trial or juvenile court proceedings. Md.Code (1996 Repl. Vol., 1999 Supp.), art. 27, § 775.[1] Such hearsay statements are admissible in certain cases after a hearing has been held to determine the trustworthiness of the statement. The victim must be under the age of twelve years, *id.* at § 775(b)(1);

---

1. The provision was originally codified in the Courts and Judicial Proceedings Article. Md.Code (1989 Supp.), Cts. & Jud. Proc., § 9–103.1.

the statement must be made to and offered by certain medical or school personnel in their professional capacity, *id.* at § 775(b)(2); the judge must conduct an *in camera* examination of the child, *id.* at § 775(f); and the judge must make a finding on the record as to the trustworthiness of the statement, *id.* § 775(e)(1).

The prosecutor here properly complied with the sections of the Code by filing a notice of intent to introduce certain out-of-court statements made by the child abuse victim. In the State's notice, Prince was provided with the content of the statements that Myeshia made to both Karl and Davis. Art. 27, § 775(c)(3)(ii). Appellant invoked his right to depose the two witnesses under art. 27, § 775(c)(4)(i), and ultimately took their depositions.

The court conducted a pretrial hearing two months prior to trial. Karl testified at length regarding the statements made to her by Myeshia. Davis met with Myeshia and testified about the abuse that the child described. The court also conducted the required *in camera* examination of Myeshia, and determined that she knew the difference between the truth and a lie.

Following the hearing, the court made extensive findings and ruled that the statements would be permitted at trial. It found that the social worker and psychologist were licensed, and that they were credible witnesses. The court also found that Myeshia "testified honestly as to what happened." The court went through the twelve statutory factors relating to guarantees of trustworthiness. *See* art. 27, § 775(d). The court found that: Myeshia had personal knowledge of the event; the statements were certainly made; there was no fabrication; the statements were both spontaneous and responsive; the statements were made shortly after the event; Myeshia's age made it unlikely that she fabricated; the duration of the abuse did not affect Myeshia's ability to recount what occurred; the statements were consistent; Myeshia's pain did not affect her statements; evidence existed to show appellant's opportunity to commit the act complained of; both

Karl and Davis used open-ended questions; and both were credible witnesses. The court ruled that the statute was constitutional and that the statements should be allowed.

Appellant's prime challenge is that the statute is unconstitutional. In *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), the Supreme Court delineated the proper analysis to determine whether hearsay statements that do not fall within a firmly rooted exception run afoul of the confrontation clause of the United States Constitution. The case involved the admissibility of statements made by a child abuse victim to a third party, who in turn related them at a trial.

In *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Supreme Court held that statements admissible under an exception to the hearsay rule must also meet the requirements of the confrontation clause. The Court took the view that necessity for and reliability of the statement are required. Necessity for the statement can be shown when the declarant is unavailable. (Since *Roberts*, the Supreme Court has ruled that unavailability of the declarant to testify need not be shown, nor need the declarant be produced at trial. *See White v. Illinois*, 502 U.S. 346, 354–57, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992); *see also Wilson v. State*, 334 Md. 313, 323–24 n. 4, 639 A.2d 125 (1994)). Reliability of the statement can be inferred when the evidence falls within a firmly rooted hearsay exception; otherwise, there must be " 'a showing of particularized guarantees of trustworthiness.' " *Wright*, 497 U.S. at 815, 110 S.Ct. 3139, *(quoting Roberts*, 448 U.S. at 66, 100 S.Ct. 2531).

In *Wright*, the Court noted that the United States Constitution does not impose "a fixed set of procedural prerequisites to the admission of such statements at trial." *Wright*, 497 U.S. at 818, 110 S.Ct. 3139. The Court said that the " 'particularized guarantees of trustworthiness' " must be shown from the totality of the circumstances that surround the making of the statement and render the declarant particularly worthy of belief. *Id.* at 820, 110 S.Ct. 3139. The Court also looked to other cases that had identified a number of factors—similar to the factors set forth in art. 27, § 775—that properly relate to

whether hearsay statements by child abuse victims are reliable. *Wright,* 497 U.S. at 821–22, 110 S.Ct. 3139. The Court refused to endorse a mechanical test for determining " 'particularized guarantees of trustworthiness,' " preferring that the factors relate to whether the child was likely to be telling the truth when making the statements. *Id.* at 822, 110 S.Ct. 3139.

Here, the trial court carefully followed the statutory requirements of art. 27, § 775. Because the statute itself builds in a twelve-factor test to guarantee the trustworthiness of the child's statements, the *Wright* test has been met. Similarly, the Court of Appeals has applied the *Roberts/Wright* analysis to determine whether a non-firmly rooted hearsay exception passes muster under the confrontation clause. *See Wilson,* 334 Md. at 322–23, 639 A.2d 125; *Chapman v. State* 331 Md. 448, 456–57, 628 A.2d 676 (1993).

We hold that the trial court conducted a full and proper hearing, pursuant to the statute, made all of the necessary rulings, and properly found that Myeshia's statements were sufficiently reliable and trustworthy. As such, there was full compliance with the confrontation clause.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**