884 A.2d 181

**Adrian F. COLLINS**

v.

**STATE of Maryland.**

No. 281, Sept. Term, 2004.

Court of Special Appeals of Maryland.

Oct. 3, 2005.

584

William E. Nolan (Nancy S. Forster, Public Defender, on brief), for appellant.

Gregory D'Alesandro (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel EYLER, JAMES R., KENNEY and BARBERA, JJ.

EYLER, JAMES R., J.

Adrian Frayne Collins, appellant, was convicted by a jury in the Circuit Court for Harford County of attempted second degree rape[1] (Count 5), two counts of third degree sexual offense[2] (Counts 2 and 6), and child abuse (Count 7). Subse-

---

1. At the conclusion of the State's case, the court granted appellant's motion for judgment of acquittal as to two other counts of attempted second degree rape (Counts 1 and 3).

2. The jury acquitted appellant of another third degree sexual offense charge (Count 4).

quently, after merging one of the third degree sexual offense convictions, the court sentenced appellant to twenty years' imprisonment for the attempted second degree rape conviction, a concurrent term of fifteen years' imprisonment for the child abuse conviction, and a ten-year suspended sentence for the remaining third degree sexual offense conviction.

On appeal, appellant contends that (1) the court erred in admitting out-of-court statements by the victim because it violated his Sixth Amendment right to confront witnesses, (2) the court erred in admitting testimony regarding other crimes in violation of Rule 5-404(b), and (3) the evidence was legally insufficient to sustain the conviction for attempted second degree rape. With respect to the first issue, the objection in circuit court was on the ground of hearsay. Subsequent to trial and conviction, the Supreme Court decided *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and appellant now argues a violation of the Confrontation Clause. We hold that the first issue was not preserved for review because the only ground stated below was hearsay, and we decline to recognize plain error. Perceiving no error with respect to the second issue, and holding as to the third issue that the evidence was legally sufficient, we shall affirm the convictions.

## Factual Background

We shall quote the relevant facts, as set forth in appellant's brief, omitting citations to the record. We will supplement the facts contained in appellant's brief as necessary.

Kelly Collins, the wife of appellant, testified that in September of 2002, she took her 8–year–old daughter, [K], to the hospital [3]. Ms. Collins explained that she took her daughter to the hospital because she "noticed [K] was very red in her vaginal area." According to Ms. Collins, this discovery

---

3. The abuse for which [K] was taken to the hospital occurred on September 29, 2002. This incident forms the basis for Count 5 of the indictment and coincides with Count 6, in which sexual offense in the third degree was alleged.

"brought back everything that [she] had forgotten about and [she] decided it was time to turn [appellant] in for molesting [her] daughter." Ms. Collins explained that what she had "forgotten about" was that she had caught appellant allegedly molesting [K][sic] on two prior occasions. According to Ms. Collins, nearly two years earlier she witnessed [K] "bent over the kitchen chair with her pants down. . . . [Appellant] was behind her with his penis out between her legs." [4] Nearly a year after the incident in the kitchen, according to Ms. Collins, she observed appellant and [K] on the couch. [5] Ms. Collins explained that [K] "had her pants pulled down," and appellant "was in the process of pulling his shorts down." Ms. Collins testified that she did not report these incidents because she felt threatened by appellant.

Ms. Susan Holian, a sexual forensic examiner (SAFE) nurse, testified that she examined [K] on October 1, 2002. Ms. Holian reported redness of the "external and internal genitalia," and explained that "by internal, that's the area right before the vaginal hole." Ms. Holian further reported that [K]'s hymen was intact, indicating a lack of vaginal penetration.

Ms. Penny Boccelli, a social worker for the Harford County Department of Social Services, testified that she interviewed [K] on October 3, 2002. Ms. Boccelli testified that the interview was conducted at the Child Advocacy Center in the presence of a police detective and was recorded on videotape. Ms. Boccelli explained that a copy of the video-tape was made for the police detective as "part of their

---

4. In Count 1 of the indictment, the State alleged that, between the dates of January 1, 2000 and June 12, 2001, appellant attempted second degree rape upon [K]. Count 1 coincides with Count 2, in which the State alleged a sexual offense in the third degree during the same time frame.

5. In Count 3 of the indictment, the State alleged that, between June 13, 2001 and September 1, 2001, appellant attempted second degree rape upon [K]. Count 3 coincides with Count 4, in which the State alleged a sexual offense in the third degree during the same time frame.

criminal evidence." The videotape of Ms. Boccelli's interview with [K] was entered into evidence and played for the jury. During the interview, [K] explained that appellant touched her "pee-pee." She told Ms. Boccelli that he put his "pee-pee" on her "pee-pee." [K] further told Ms. Boccelli that this type of contact occurred on two prior occasions. Once in the kitchen, and once on the couch.

Mr. James Hanna, appellant's step-father, also testified for the State. He testified that on September 30, 2002, he received a phone call from Ms. Collins, who told him she was taking [K] to the hospital. Mr. Hanna testified that as a result of that phone call, he went to the home of appellant and Ms. Collins. He explained that when he arrived, he witnessed appellant and Ms. Collins arguing, and heard appellant say "that nothing had happened that weekend, it was all in the past, there was no penetration."

Appellant testified on his own behalf, and expressly denied ever having "any sort of sexual activity" with [K]. Moreover, Dr. Kent Hymel, a pediatric physician and expert in sexual child abuse examination, testified that "redness and tenderness are completely non-specific findings." Dr. Hymel stated that such findings "cannot or should not be specifically related to sexual assault, because there are multiple other even more common explanations for redness and tenderness." Dr. Hymel explained that such symptoms may, for example, be the result of "simple skin irritation."

On January 5, 2004, after jury selection but prior to opening statements, the court interviewed [K] in chambers. Subsequently, the court heard arguments in regard to the State's motion to introduce the videotaped interview between [K] and Ms. Boccelli, pursuant to Md.Code (2001), § 11–304 of the Criminal Procedure Article. The following colloquy pertinent to this appeal ensued.

THE STATE: Your Honor, the State is making a motion to have the videotaped testimony—or the videotaped interview of the victim in this case, [K], introduced into trial and to be produced in lieu of live testimony. We've had the child interviewed in chambers by Your Honor, and I've talked

with defense counsel, and the precedent under 11–304 . . . is that an out-of-court statement may be admissible if made to a person who is acting lawfully in the course of her profession and is a licensed social worker, and Miss [Boccelli] is so, and I have talked to defense counsel and he has stated he would stipulate to the fact that she was acting lawfully in her profession and was licensed at the time, but if need be, for the court's purposes, I can put her on the stand. APPELLANT'S COUNSEL [6]: I would stipulate to that, Your Honor, and that she is currently a licensed social worker as well.

THE COURT: All right, so what you're doing, then, is offering this video as an out-of-court statement of a child victim, right?

THE STATE: Yes, Your Honor.

* * *

THE COURT: And the child in this case is not going to testify; is that correct?

THE STATE: Not if she doesn't have to. Well, no, Your Honor.

* * *

THE COURT: And we're here for the purpose of a hearing to make a determination as to particularized guarantees of trustworthiness [pursuant to § 11–304(e)]; is that correct?

THE STATE: That is true, Your Honor.

APPELLANT'S COUNSEL: That's correct, Your Honor, and under (f), Your Honor will need to make a finding on the record as to the specific guarantees of trustworthiness that are in the statement and determine the admissibility of the statement.

Subsequently, the videotaped interview was played for the court. Both before and after the videotape was played, appellant's counsel argued that the videotape did not meet the "particularized guarantees of trustworthiness" requirements

---

6. Appellant's counsel on this appeal is not the same as at trial.

of section 11–304(e), focusing predominantly on (e)(xii), which mandates that the court consider "whether the statement was suggested by the use of leading questions." At no time did appellant object to the videotape on the grounds that it violated his right to confrontation under the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights.[7]

On January 6, 2004, the court ruled on the State's motion. In so doing, it stated the following with regard to section 11–304(e).

> Subsection (c) requires that the out-of-court statement is admissible only if it's made to and offered by a person acting lawfully in the course of that person's profession, and one of the professions listed would be a licensed social worker, and that in fact is the case here. It's also a videotape being made through the licensed social worker, but it is in fact a video presentation.
>
> \* \* \*
>
> The court also must find that there are particularized guarantees of trustworthiness pursuant to subsection (e). Keeping in mind that the issue of trustworthiness of the statement and the degree of probative value are two different items, in this particular instance I'm looking at this only to see if I believe that the child's statement has some indication of, or guarantees of, trustworthiness, and subsection (2) of subsection (e) sets out the various factors which the court must examine.
>
> \* \* \*
>
> "Whether the statement was spontaneous or directly responsive to questions." Well, in this particular case the statement was almost entirely made pursuant to and responsive to questions asked by the social worker.
>
> \* \* \*

---

7. Maryland has a traditional practice of deeming Article 21 of the Declaration of Rights to be in *pari materia* with the Sixth Amendment. *See State v. Snowden,* 385 Md. 64, 75 n. 1, 867 A.2d 314 (2005).

The next factor involves the use of leading questions, and there were some leading questions obviously used in the garnering of information during the course of the video statement. The questions that were asked appeared to me to really be more in preparing the witness to answer other more important questions that were not leading. Again, given the entirety of the statement, I do not feel that the questioning or manner of questioning was such as to preclude the trustworthiness of what was said.

\* \* \*

So given all of that, I'm going to admit the videotape. . . .

During trial, Ms. Boccelli testified she was a licensed social worker employed by the Harford County Department of Social Services and assigned to the Harford County Child Advocacy Center (the "Center"). Ms. Boccelli's role at the Center was to investigate allegations of child sexual abuse. On October 1, 2002,[8] Ms. Boccelli was assigned to investigate the allegations of [K]'s abuse. On October 3, Ms. Boccelli met [K] at the Center to conduct an interview. Ms. Boccelli stated that interviews of this type were "frequently" videotaped and "generally a detective is involved in the investigation." Ms. Boccelli identified the videotape of the interview between herself and [K].

Following Ms. Boccelli's testimony on direct, appellant's counsel renewed his objection to the playing of the videotaped out-of-court statement of [K] "for all the reasons stated previously," which was denied, and at that time the videotape was played for the jury.

At the close of the State's case, appellant moved for judgment of acquittal as to all counts. After hearing arguments, the court granted appellant's motion with regard to Counts 1 and 3, stating that "the mere fact that [Ms. Collins] sees him

---

8. Ms. Boccelli testified that, on September 30 at approximately 10:30 p.m., the Center received a referral from a police officer at Harford Memorial Hospital. At that time, another social worker went to the hospital to "assess the risk and safety of the child," and the following day Ms. Boccelli was assigned to the case.

standing there does not create penetration. The mere fact he's standing before her with his penis out does not give rise to penetration. Second degree rape requires penetration. Attempted second degree rape requires some indication that there is more than just standing there." The court, however, refused to grant appellant's motion with regard to Count 5 because "[t]he evidence of that [penetration] is the testimony of the SAFE nurse that the interior labia were in fact red."

During direct examination of Ms. Collins, the State asked her to "describe [her] relationship with [appellant]." Appellant's counsel objected, arguing that, should Ms. Collins testify that the relationship was violent, her testimony would be irrelevant and prejudicial evidence of "other crimes." The court agreed to hear the testimony of Ms. Collins outside the presence of the jury before deciding on admissibility. The following then occurred.

THE STATE: I guess we'll go back to my original question. Describe your relationship with the defendant.

MS. COLLINS: It was not good, it was very violent.

THE STATE: Can you tell us what it was like in your home?

MS. COLLINS: It was like walking on egg shells, I couldn't do anything without him getting upset.

THE STATE: Were you frightened of [appellant]?

MS. COLLINS: He would punch holes in-he punched a hole, a large hole, in my daughter's bedroom door, and that was there and we both were afraid.

THE STATE: Which daughter are you speaking of?

MS. COLLINS: [K], the oldest daughter.

THE STATE: Okay.... At this point I guess I'll raise— Well, Your Honor, I do have photographs, I actually have photographs of that hole in that door.

THE COURT: All right.

THE STATE: I'd be seeking to introduce these as well, and I guess it's still under the same auspices.

THE COURT: Yes, it's the same process.

THE STATE: Are these photographs of that door?

MS. COLLINS: Yes, it is.

THE STATE: Do you recognize these as photographs of the hole in the door?

MS. COLLINS: Yes, I do.

THE STATE: And are they true and accurate reflections of what the door looked like?

MS. COLLINS: Yes.

THE STATE: I won't admit them at this time, Your Honor, but that's where I'm going, and that's basically the testimony, Your Honor, I would elicit from the witness.

THE COURT: [Appellant's counsel], do you have any questions?

APPELLANT'S COUNSEL: Well, I'm still confused as to the relevance of it and I still don't know quite where we're going with this. She has given a description that he is very violent, but I don't know what that means and I don't know how it relates time-wise to the things that we are testifying about. The same thing with the holes in the door. Again, I don't know where that comes in terms of time to any of the alleged instances, and we have three fairly specific-well, it is prejudicial and not very probative regarding the issue of her not reporting. We seem to have two holes in a door, I gather coming from one burst of temper, which is being offered to explain the failure to report sexual abuse over a period lasting up to about two-and-a-half years, so I don't think that it's probative.

THE COURT: I think the court would disagree with you on that. What this is is evidence that sort of falls within the Merzbacher [9] case, and that would be that the defendant engaged in a pattern of conduct, at least in this witness's mind, that was such that it intimidated her, and it's being offered as her basis for not reporting the prior alleged sexual acts. I think it certainly is relevant, it was part of your opening statement, and it's an obvious question for the

9. *Merzbacher v. State*, 346 Md. 391, 697 A.2d 432 (1997).

jury as to why this was not reported previously. This is being offered as the reason why, and I think the probative value outweighs any unfair prejudice.

Immediately after this colloquy and the court's ruling, the jury returned to the courtroom and the following occurred.

THE STATE: Please describe your relationship with the defendant for the jury.

MS. COLLINS: It was like walking on egg shells. Every time I would defend myself, he would hit me.

APPELLANT'S COUNSEL: Objection. Ask to approach.

THE COURT: Approach.

\* \* \*

APPELLANT'S COUNSEL: We didn't stay on track very long, did we?

THE COURT: Well, it's somewhat different, but—

APPELLANT'S COUNSEL: Your honor, it's not somewhat different from the proffer, it's hugely different from the proffer, and we're now clearly into other crimes as well as other bad acts evidence.

THE COURT: Merzbacher says a pattern of conduct giving a basis for failure to report is admissible, and I'm not going to grant your motion to disqualify that statement or this witness based on the prior testimony. I've given [the State] an opportunity to establish what was implicit in the first proffer, that there was a pattern, and if she does that I'm going to overrule your objection. Well, I'm going to overrule it at this time anyway, and you'll have a continuing objection as to that.

\* \* \*

THE COURT: Let me see what happens here with respect to this particular witness and we'll go from there, but I believe from what I heard even the first time that there is in fact a pattern, and that's one of the reasons why I'm overruling your objection. It's pretty obvious she's not the most articulate witness that's ever been on the witness stand, so we'll see what happens.

Thereafter, Ms. Collins testified as to the prior sexual assaults on [K] by appellant. She also testified as to the photographs of the hole in the door. She explained that she did not tell anyone about the incidents because appellant threatened her and told her that he would hurt her and [K].

## Questions Presented

As phrased by appellant:

1. Did the trial court err when it admitted into evidence, (1) the testimony of a social worker regarding out-of-court statements made by the victim during an interview between the social worker and the victim in the presence of a police detective; and (2) the videotape recording of that interview?

2. Did the trial court err by admitting testimony regarding other crimes in violation of Maryland Rule 5-404(b)?

3. Did the State present sufficient evidence to sustain a conviction of attempted second degree rape?

## Parties' Contentions

Appellant contends that Ms. Boccelli's testimony regarding out-of-court statements made by [K] and the videotaped interview of [K] were inadmissible and violated his constitutional right to confront the witnesses against him. In support of this contention, appellant argues that the Supreme Court's recent decision in *Crawford*, and Maryland's subsequent decision in *State v. Snowden*, 385 Md. 64, 867 A.2d 314 (2005), mandate that testimonial statements may not be offered into evidence in a criminal trial unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. Appellant argues that [K]'s statements to Ms. Boccelli were testimonial in nature because [K] spoke to Ms. Boccelli while Ms. Boccelli was acting in the capacity of a child abuse investigator for the county, and because [K] made the statements both to Ms. Boccelli and the police detective who was present during the interview. Furthermore, appellant contends that there was no indication that [K] was unavailable to

testify, and there was no indication that appellant had a prior opportunity to cross-examine her.

Appellant urges us to address this issue on constitutional grounds, "notwithstanding defense counsel's failure to specifically object" to the admission of [K]'s out-of-court statements, because the law changed dramatically between the time of trial and the time of this. Thus, appellant suggests that we should take cognizance of the plain error.

Appellant's second contention is that the trial court erred by allowing Ms. Collins to describe her relationship with appellant. In support of this contention, appellant argues that Ms. Collins's testimony, outside of the presence of the jury, was that appellant punched a hole in a door. The testimony elicited from Ms. Collins in front of the jury, however, consisted of "other crimes" evidence pursuant to Maryland Rule 5–404(b), because the admitted testimony was of appellant's criminal acts of assaulting Ms. Collins on several occasions. Appellant argues that such evidence was highly prejudicial and inadmissible.

Finally, appellant contends that the evidence was insufficient to support a conviction for attempted second degree rape. Appellant argues that the evidence did not prove that appellant intended to have vaginal intercourse with [K] and that he took a substantial step to act on that intention as is required for an attempt.

The State argues that this Court should decline to address appellant's complaint that his constitutional rights to confrontation were violated by the admission of [K]'s out-of-court statements to Ms. Boccelli because appellant did not object to the videotape or to Ms. Boccelli's testimony relating to the videotape on confrontation grounds. Rather, the State contends, appellant objected only on the ground that the requirements of section 11–304 for establishing trustworthiness were not satisfied.

As to the second issue, the State contends that the evidence of appellant's physical abuse was not offered to prove appellant's guilt, but rather to explain why Ms. Collins waited to

report the prior incidents of sexual abuse. According to the State, under *Merzbacher v. State,* 346 Md. 391, 697 A.2d 432 (1997), this type of evidence may be admitted because it was substantially relevant to a contested issue in the case and was relevant to the setting in which the alleged sexual misconduct took place.

Finally, the State contends that the evidence was sufficient to persuade any rational trier of fact that appellant was guilty of attempted second degree rape. In support of this contention, the State argues that Ms. Holian's testimony, combined with the other circumstantial evidence of appellant' prior sexual abuse of [K], was sufficient for a jury to find the elements of attempt.

## Discussion

### 1. *Testimony of Ms. Boccelli and admission of videotaped statement of [K]*

At the outset, in light of the wording used by appellant to describe his first contention, which could be read to suggest that Ms. Boccelli testified to the substance of [K]'s out-of-court statements, we wish to clarify the evidence that is the subject of the challenge. Pursuant to section 11–304(c)(4), as noted by the court, Ms. Boccelli testified only that the out-of-court statements were made to her, and she was offering the videotape as a person acting lawfully in the course of her profession as a social worker. In other words, contrary to the implication that the out-of-court statements came in *through* the testimony of Ms. Boccelli, they did not. Rather, the out-of-court statement came in through the the videotape.

Turning to the issue, we agree with the State that appellant's first argument was not preserved for our review, and we decline to recognize plain error. We shall explain.

### A. *The Confrontation Clause and "Tender Years" Statute*

The Sixth Amendment of the United States Constitu-

tion and Article 21 of the Maryland Declaration of Rights [10] provide that, in a criminal prosecution, the accused has the right to be confronted with the witnesses against him. This guarantee becomes particularly relevant when hearsay declarations are proffered. In *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Supreme Court determined that,

> when a hearsay declarant is not present for cross-examination at trial, *the Confrontation Clause normally requires a showing that he is unavailable.* Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. *In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.*
>
> *Id.* at 56, 100 S.Ct. 2531 (emphasis added).

Thus, *Roberts* stood for the proposition that certain out-of-court declarations, *i.e.,* where the evidence did not fall into a "firmly rooted hearsay exception," could be admitted into evidence when there was both a showing that the witness was unavailable *and* a showing of particularized guarantees of trustworthiness.

■ Following *Roberts*, Maryland enacted its "tender years" statute, first codified at Md.Code (1973, Repl.Vol.1989), § 9–103.1 of the Courts & Judicial Proceedings Article, which provided for the admissibility of certain out-of-court statements that would otherwise be inadmissible hearsay. The legislation was enacted in response to concerns that child abuse and sexual offenses were not being prosecuted adequately due to many child victims' inability to testify as a result of their young age or fragile emotional state. *Snowden,* 385 Md. at 76, 867 A.2d 314. Under this "tender years" exception, a court could admit into evidence in a juvenile proceeding or criminal trial hearsay statements by victims of child abuse if the statements were made to certain health or

---

10. *See supra,* n. 7.

social work professionals in the course of their professions, and either the child was available, subject to cross-examination, and testified at the criminal proceeding or by closed circuit television, or was unavailable due to death, absence from the jurisdiction, serious physical disability, or inability to communicate due to severe emotional distress. Md.Code (1973, 1989 Repl.Vol.), § 9–103.1(c) of the Courts & Judicial Proceedings Article.

The Supreme Court relaxed the constitutional requirement that the declarant be unavailable in *White v. Illinois*, 502 U.S. 346, 354–57, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992). In 1994, the legislature amended the statute so that it could be utilized regardless of whether the child was available to testify. *Snowden*, 385 Md. at 78, 867 A.2d 314 (citations omitted). To satisfy the constitutional requirements of *Roberts*, however, the legislature "imposed safeguards in the tender years statute intended to insure that any admitted statement possessed 'particularized guarantees of trustworthiness.'" *Id.; see* Md. Code (2001), § 11–304(e) of the Criminal Procedure Article. Particularly, when a child victim does not testify, the out-of-court statement will only be admissible when there is corroborative evidence that the defendant had the opportunity to commit the alleged crime, and thirteen other enumerated factors relating to trustworthiness are met.[11]

---

11. Md.Code (2001), § 11–304(e) of the Criminal Procedure Article states:

(e) *Particularized guarantees of trustworthiness.*—(1) A child victim's out of court statement is admissible under this section only if the statement has particularized guarantees of trustworthiness.

(2) To determine whether the statement has particularized guarantees of trustworthiness under this section, the court shall consider, but is not limited to, the following factors:

(i) the child victim's personal knowledge of the event;

(ii) the certainty that the statement was made;

(iii) any apparent motive to fabricate or exhibit partiality by the child victim, including interest, bias, corruption, or coercion;

(iv) whether the statement was spontaneous or directly responsive to questions;

(v) the timing of the statement;

■ On March 8, 2004, seven days after appellant's sentencing hearing, the Supreme Court "fundamentally altered its Confrontation Clause jurisprudence when it decided *Crawford* .... [12]" *Id.* at 78, 867 A.2d 314 (citations omitted). In *Crawford*, the Court rejected the *Roberts* test for admissibility because it found the test "fundamentally incompatible with the Framers' vision and interpretation of the [Confrontation] Clause." *Id.* (*citing Crawford*, 541 U.S. at 68, 124 S.Ct. 1354). The Court instead held that the Confrontation Clause mandates that testimonial statements may not be offered into evidence in a criminal trial unless (1) the declarant/witness is unavailable, and (2) the defendant had a prior opportunity to cross-examine the declarant/witness. *Id.*

In *Snowden*, the Court of Appeals applied the Supreme Court's holding in *Crawford* to statements made by child sexual abuse victims to a social worker, admitted into evidence via Section 11–304. In that case, the three young victims made statements to a social worker in the presence of a police officer. *Snowden*, 385 Md. at 86, 867 A.2d 314. The victims

---

(vi) whether the child victim's young age makes it unlikely that the child victim fabricated the statement that represents a graphic, detailed account beyond the child victim's expected knowledge and experience;

(vii) the appropriateness of the terminology of the statement to the child victim's age;

(viii) the nature and duration of the abuse or neglect;

(ix) the inner consistency and coherence of the statement;

(x) whether the child victim was suffering pain or distress when making the statement;

(xi) whether extrinsic evidence exists to show the defendant or child respondent had an opportunity to commit the act complained of in the child victim's statement;

(xii) whether the statement was suggested by the use of leading questions; and

(xiii) the credibility of the person testifying about the statement.

12. Michael Crawford had been found guilty of assault based on a tape-recorded statement by his wife made to the police. *Snowden*, 385 Md. at 78, 867 A.2d 314. Crawford's wife was unavailable to testify at trial. *Id.* Crawford objected to the use of his wife's statement arguing that it violated the Confrontation Clause. *Id.* Crawford's conviction was reversed on appeal but ultimately, the Washington Supreme Court reinstated his conviction, relying on *Roberts* in concluding that his wife's statements were sufficiently trustworthy. *Id.*

did not testify at trial, but their out-of-court testimonial statements regarding sexual abuse were admitted through the testimony of the social worker. The Court of Appeals opined that because the social worker "was performing her responsibilities in response and at the behest of law enforcement, she became, for Confrontation Clause analysis, an agent of the police department." *Id.* (citations omitted). The Court concluded:

[I]f a statement is made under such circumstances that would lead an objective person to believe that statements made in response to government interrogation later would be used at trial, the admission of those statements must be conditioned upon *Crawford*'s requirements of unavailability and a prior opportunity to cross-examine.

*Id.* at 92, 867 A.2d 314.

■ Appellant urges us to apply *Crawford* and *Snowden* because, like *Snowden*, the admission of [K]'s out-of-court testimony to Ms. Boccelli, which testimony had occurred out-of-court and in the presence of a police detective, violated his right to confront the witnesses against him. In *Snowden*, however, unlike in the present case, the appellant specifically objected on constitutional grounds, thus preserving the Confrontation Clause issue for appellate review. *Snowden*, 385 Md. at 93–95, 867 A.2d 314 ("In this case, Snowden objected to the use of the tender years statutory procedure because he felt it denied him the protections of the Confrontation Clause.") *Id.* at 96, 867 A.2d 314. Here, the basis of appellant's objection was only that the videotaped testimony as offered by Ms. Boccelli did not meet the particularized guarantees of trustworthiness requirements of Maryland's "tender years" hearsay exception.

## B. *Plain Error*

■ Normally, an appellate court will not decide any issue not raised in and decided by the trial court. *Richmond v. State*, 330 Md. 223, 235, 623 A.2d 630 (1993); *see also* Md. Rule 8–131(a) "Ordinarily, the appellate court will not decide

any other issue unless it plainly appears by the record to have been raised in or decided by the trial court. . . .". Thus, as explained below, we could end our analysis here as the issue was not preserved for appellate review by objection on confrontation grounds. Nevertheless, "as the cases hold with respect to errors of law generally, an appellate court may in its discretion in an exceptional case take cognizance of plain error even though the matter was not raised in the trial court." *Rubin v. State*, 325 Md. 552, 587, 602 A.2d 677 (1992) (*quoting Dempsey v. State*, 277 Md. 134, 141–42, 355 A.2d 455) (other citations omitted).

 In *Trimble v. State*, 300 Md. 387, 478 A.2d 1143 (1984), the Court of Appeals explained under what circumstances the exercise of plain error is justified as follows:

We said in *State v. Hutchinson*, 287 Md. 198, 203, 411 A.2d 1035 (1980), that "we have characterized instances when an appellate court should take cognizance of unobjected to error as compelling, extraordinary, exceptional or fundamental to assure the defendant of fair trial." We further made clear that we would intervene in those circumstances only when the error complained of was so material to the rights of the accused as to amount to the kind of prejudice which precluded an impartial trial. (citations omitted).

*Trimble*, 300 Md. at 397, 478 A.2d 1143.

 Furthermore, although we have not "set forth any fixed formula for determining when discretion should be exercised . . . we do expect that the appellate court would review the materiality of the error in the context in which it arose, giving due regard to whether the error was purely technical, the product of conscious design or trial tactics or the result of bald inattention," *Hutchinson*, 287 Md. at 202–03, 411 A.2d 1035; *see also Stanley v. State*, 157 Md.App. 363, 370, 851 A.2d 612 ("There is no 'fixed formula for determining when we should exercise our discretion.' ") (*quoting Rubin*, 325 Md. at 588, 602 A.2d 677) (other citations omitted), as these enumerated factors "are ordinarily inconsistent with circumstances

justifying an appellate court's intervention" under plain error. *Rubin,* 325 Md. at 588, 602 A.2d 677.

▮▮▮ Although appellant acknowledges that he failed to object on the ground that the admission of the out-of-court statements violated appellant's Sixth Amendment right to confrontation, he implores us to address his unpreserved claim pursuant to our discretion under the plain error doctrine because his "failure to object . . . was based not on inadvertence, but on a reasonable belief that the trial court's actions accorded with well-established law that fundamentally changed by the time of appeal." In support of this argument, appellant cites *Franklin v. State,* 319 Md. 116, 571 A.2d 1208 (1990),[13] *Hays v. State,* 240 Md. 482, 214 A.2d 573 (1965),[14] and *Squire v. State,* 280 Md. 132, 368 A.2d 1019 (1977).[15] He

---

13. Prior to the ruling of the Court of Appeals in *State v. Jenkins,* 307 Md. 501, 515 A.2d 465 (1986), holding that, in order to constitute assault with intent to murder there must be a showing of an actual specific intent to take life, the trial court instructed the jury that a specific intent to kill was not required. In reversing, the *Franklin* Court concluded that, "[a]t the time the trial court issued the instruction, it did not have the benefit of *Jenkins.* Therefore, the error could not have been corrected by additional instructions." *Id.* at 126, 515 A.2d 465.

14. Appellants were indicted by a grand jury "from which any persons who did not believe in the existence of God were excluded," and neither appellant challenged the array. Three days before oral argument in the Court of Appeals, the Court filed *Schowgurow v. State,* 240 Md. 121, 213 A.2d 475 (1965), which held that, under the recent decisions of the Supreme Court, the century-old provision in the Maryland Declaration of Rights requiring demonstration of belief in God as qualification for service as a grand juror was invalid. In its holding the Court observed: "If the appellants had objected to the method of selection of the grand jury which indicted them before their trial or at any time in the proceedings below, that objection would have been rejected by the lower court, there then being no decision of this Court to the contrary." *Hays,* 240 Md. at 486, 214 A.2d 573.

15. Four days after a Supreme Court decision rendering unconstitutional the practice of requiring the defendant to prove self-defense, the trial court, without objection, instructed the jury that the burden of proving self defense was on the defendant. The Court of Appeals, recognizing "exceptional circumstances" and "unique factors" due to the fact that up until four months after the appellant was sentenced "it was the well

suggests that these cases support the premise that his failure to preserve the constitutional issue for our review should be excused because they hold that where well-established law undergoes a substantial change while a case is pending appeal, *i.e.*, before final judgment, appellate courts will consider an issue arising under the new interpretation of the law even if not raised at trial.[16] In the analysis that follows, however, we shall explain why we shall ultimately decline appellant's request to recognize plain error.

### i. The Nature of the Change in the Law

Although we agree with appellant that federal constitutional law changed subsequent to his trial, appellant failed to present any constitutional challenge in circuit court based on his right to confront the witnesses against him.

■■■ In *Roberts,* the Supreme Court addressed the relationship between the Confrontation Clause, *i.e.*, where the accused has the constitutional right to be confronted with the witnesses against him, and hearsay, *i.e.*, an admission in court of a statement made out of court to show the truth of the matter asserted. 448 U.S. at 62–65, 100 S.Ct. 2531. While we recognize the interrelationship between the two rules, *see California v. Green,* 399 U.S. 149, 155, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) ("[h]earsay rules and the Confrontation Clause are generally designed to protect similar values"); *Dutton v. Evans,* 400 U.S. 74, 76, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970) (Hearsay rules and the Confrontation Clause "stem from the same roots"), it is well-settled that the two grounds

---

established law ... that the burden of proving self-defense was on the defendant," took cognizance of plain error and reversed. *Squire,* 280 Md. at 136, 368 A.2d 1019.

**16.** Pursuant to *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final...." *Id.* at 328, 107 S.Ct. 708. In the present case, neither party argues to the contrary, thus assuming correctly that *Crawford* and *Snowden* are applicable to the present case.

are not synonymous or coextensive; thus, objecting on one ground does not preserve the other ground.

The Confrontation Clause, under the *Roberts* test, excluded hearsay that did not meet certain requirements—specifically, a showing of particularized guarantees of trustworthiness. At the time of trial in the present case, the Confrontation Clause was in existence and excluded hearsay unless it met the *Roberts* requirements. As noted above, while the hearsay rule and the constitutional issue are interrelated, the fact that evidence might have met the state requirement for admission did not necessarily mean that it would meet the federal constitutional requirement as it then existed.

Distinguishable from the present case, in the cases relied upon by appellant, it would have been futile to object on *any* ground because the trial courts were merely applying the law as it then existed. In fact, for the Court in those cases to hold that the appellants had waived their right to object "would be to say that the appellants effectively waived a right which [the Court had] held did not then exist." *Hays*, 240 Md. at 489, 214 A.2d 573. Conversely, although *Crawford* and *Snowden* altered the law with respect to the relationship between the Confrontation Clause and the rules of evidence as it relates to hearsay, it can hardly be said that the right to confront one's accusers under the Confrontation Clause is a new right that was not in existence at the time of appellant's trial and sentencing. *See Crawford*, 541 U.S. at 42–50, 124 S.Ct. 1354 ("The right to confront one's accusers is a concept that dates back to Roman times.") Indeed, unlike the cases cited by appellant, *Crawford* created no new right. Quite to the contrary, in fact, at the time of trial in this case, the Confrontation Clause was in existence and excluded hearsay unless it met the *Roberts* requirements for trustworthiness. Thus, when challenging trustworthiness and/or unavailability, appellant's counsel should have objected on confrontation as well as hearsay grounds—*independent from the subsequent change in the law*. As such, appellant was required to make

an objection premised on a federal constitutional claim based on the absence of confrontation.

Appellant argues that in *Prince v. State*, 131 Md.App. 296, 748 A.2d 1078 (2000), precedent at the time of appellant's trial, we held that the "tender years" statute's incorporation of a multi-factor test to guarantee the trustworthiness of the child victim's statement satisfied constitutional requirements, and therefore, admission of out-of-court statements pursuant to the statute did not violate the Confrontation Clause. We could not and did not hold that the federal constitutional requirement did not have to be met. Similarly, we did not hold that compliance with the statute necessarily meant compliance with the constitutional requirement in all cases upon their own facts. The federal constitutional requirement was in existence after *Prince*, as it was before, and an objection was available on that ground. In *Prince*, as in *Snowden*, defense counsel did object on the ground of violation of the Confrontation Clause, and the objections were prior to the *Crawford* decision.

### ii. *Compelling, extraordinary, and exceptional circumstances*

As stated previously, an appellate court may not take cognizance of unobjected to error unless the error occurred in compelling, extraordinary, exceptional or fundamental circumstances which vitally affected the defendant's right to a fair trial.

Ms. Collins, based on her personal knowledge, testified that she saw (1) redness in [K]'s vaginal area, (2) appellant behind [K] with his penis between her legs, and (3) appellant and [K] on the couch with her pants down, and appellant removing his pants. Additionally, Ms. Holian, the SAFE nurse, based on her personal knowledge, testified that she saw redness in [K]'s vaginal area. The corroborating evidence offered by the State is certainly relevant, under a plain error analysis, to whether unobjected to error should be recognized as compelling, extraordinary, exceptional, or fundamental.

After considering all of the circumstances, it is primarily the two factors, discussed above, that leads us to decline to recognize plain error in this case. The ramifications of trial counsel's error in failing to object on confrontational grounds will be better addressed in a post-conviction proceeding.

### 2. *Testimony regarding "other crimes"*

Appellant contends that the trial court committed reversible error by admitting Ms. Collins's testimony regarding "other crimes" in violation of Maryland Rule 5–404(b). Appellant observes that the State's proffered testimony outside of the presence of the jury—that appellant punched a hole in the door—differed from Ms. Collins's testimony before the jury— that appellant had hit her previously. Appellant contends that the information regarding his prior assaults on Ms. Collins should have been excluded "because it may [have] tend[ed] to confuse the jurors, predispose them to a belief in the defendant's guilt, or prejudice their minds against the defendant." *Terry v. State,* 332 Md. 329, 334, 631 A.2d 424 (1993) (citations omitted).

Maryland Rule 5–404(b) provides

**Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character or a person in order to show action in conformity therewith. *It may, however, be admissible for other purposes,* such as proof of motive, opportunity, intent, preparation, common scheme or plain, knowledge, identity, or absence of mistake or accident.

(Emphasis added).

In other words, "evidence of a defendant's prior criminal acts may not be introduced to prove that he is guilty of the offense for which he is on trial." *Straughn v. State,* 297 Md. 329, 333, 465 A.2d 1166 (1983).

At the outset, we note that the admission of evidence is committed to the considerable and sound discretion of the trial court. *Merzbacher v. State,* 346 Md. 391, 404, 697 A.2d 432 (1997) (citations omitted). Furthermore, all

relevant evidence, *i.e.*, evidence that tends to establish or refute a fact at issue in the case, is generally admissible. *See* Maryland Rule 5–402. Even relevant evidence, however, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* Maryland Rule 5–403. The trial court's relevancy determination, as well as its decision to admit relevant evidence over an objection that the evidence is unfairly prejudicial, will not be reversed absent an abuse of discretion. *Merzbacher*, 346 Md. at 405, 697 A.2d 432.

In *Merzbacher*, the Court of Appeals reviewed "other crimes" evidence in a sexual abuse case. Merzbacher was a teacher at the Catholic Community Middle School of Baltimore. *Id.* at 396, 697 A.2d 432. At his trial in 1995, Elizabeth Murphy testified that, from 1972 to 1975, Merzbacher subjected her to sexual, physical, and emotional violence. *Id.* On appeal, Merzbacher claimed that he was unfairly prejudiced by the admission of evidence relating to other criminal acts for which he was not on trial because of testimony alleging assaults upon other members of Murphy's class and other collateral behavior. *Id.* at 408, 697 A.2d 432. Recognizing the credibility issue related to the 20–year gap between the time Murphy reported the crime and the time it was committed, the trial court " 'allow[ed] this type of evidence to come in as it relate[d] not necessarily to a specific charge but [because] it relate[d] to the victim in this case during the timeframe work of the specific charges.' " *Id.* at 408–09, 697 A.2d 432 (alterations in original).

The Court of Appeals, noting that Rule 5–404(b) "incorporates well recognized exceptions to the general prohibition of other crimes evidence," *id.* at 407, 697 A.2d 432, refused to disturb the trial court's analysis, stating:

Merzbacher defended himself by attacking the credibility of Murphy, pointing to the over two decades it took for her to come to the authorities. By doing so, he forced the State into showing the jury that Murphy's rape took place in a larger, more invidious context. Murphy testified, corroborated by other witnesses, that Merzbacher used a combina-

tion of frivolity and fright to run his classroom (internal citation omitted). In part, this served to explain and was particularly relevant to why Murphy, either reasonably or unreasonably, waited to reveal her story to the State's Attorney's Office.

*Id.* at 409, 697 A.2d 432.

Ultimately, the Court concluded that " 'evidence of other crimes may be admitted ... *if it is substantially relevant to some contested issue in the case* and if it is not offered to prove the defendant's guilt based on propensity to commit crime or his character as a criminal.' " *Id.* (emphasis added) (*citing State v. Faulkner*, 314 Md. 630, 634, 552 A.2d 896 (1989) (other citations omitted)).

Similarly, in the case before us, appellant argues that the evidence of appellant's prior assaults on Ms. Collins was unfairly prejudicial because it described criminal acts for which appellant was not on trial. During opening statements, appellant's counsel stated:

And you'll have to look at the credibility of the mother, who will come into court with I think the most incredible claim any mother can make in a courtroom, that she witnessed a sexual violation of her daughter and did nothing about it for years.

In so doing, appellant made one of the contested issues in the case why Ms. Collins waited to report the prior incidents of sexual abuse. One of her explanations for not reporting the incidents immediately was that her relationship with appellant was a violent one. The trial court, recognizing that appellant raised the issue of Ms. Collins's failure to report the incidents immediately, thus making it relevant, concluded that the probative value of the testimony outweighed the danger of unfair prejudice. We perceive no abuse of discretion.

### 3. *Sufficiency of the evidence*

Appellant argues that the evidence was insufficient to sustain his conviction for attempted second degree rape, based on the incident of late September 2002, because

the State failed to prove that appellant intended to have vaginal intercourse with [K] and took a substantial step in that regard. At the outset, we note that the standard for reviewing the sufficiency of the evidence is "whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 313, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see State v. Smith,* 374 Md. 527, 533, 823 A.2d 664 (2003). We give "due regard to the [fact finder's] findings of facts, its resolution of conflicting evidence, and significantly, its opportunity to observe and assess the credibility of witnesses." *See Harrison v. State,* 382 Md. 477, 488, 855 A.2d 1220 (2004) (citing *McDonald v. State,* 347 Md. 452, 474, 701 A.2d 675 (1997)), *cert. denied,* 522 U.S. 1151, 118 S.Ct. 1173, 140 L.Ed.2d 182 (1998) (quoting *State v. Albrecht,* 336 Md. 475, 478, 649 A.2d 336 (1994)).

In its instructions to the jury, the trial court stated, in accordance with Md.Code (2002), §§ 3–301, 3–304 of the Criminal Law Article:

The defendant is also charged with attempted second degree rape. The definition of "attempt" is a substantial step, beyond mere preparation, toward the commission of a crime, and in order to convict the defendant of attempted second degree rape, the State has to prove the following: 1) that the defendant took a substantial step, beyond mere preparation, toward the commission of the crime of second degree rape; and 2) that the defendant intended to commit the crime of second degree rape.

In order to convict the defendant of attempted second degree rape, the State has to prove: 1) that the defendant attempted to have vaginal intercourse with [K] on September 29th, 2002; 2) that [K] was under the age of 14 years at the time of the act; and 3) that the defendant was at least four years older than [K].

Vaginal intercourse, for the purpose of this crime, means the penetration of the penis into the vagina. The slightest

**612**

penetration of the labia majora will be sufficient for this purpose, and the emission of semen is not required.

■ The evidence presented by the State was sufficient to show that the victim was under the age of 14 and that appellant was more than four years older than her at the time of the incident. Ms. Holian, the SAFE nurse, testified that the redness in [K]'s vaginal area was on the external and internal genitalia. She further stated that, "by internal, that's the area right before the vaginal hole." *See Kackley v. State,* 63 Md.App. 532, 536–37, 493 A.2d 364 (1985) ("[P]enetration into the labia minora or the vagina is not required [for second degree rape]; invasion of the labia majora, however slight, is sufficient to establish penetration."). This testimony, along with all of the other evidence, was sufficient to persuade a rational trier of fact that appellant attempted to rape [K] in the second degree.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**