The PEOPLE of the State of Colorado,
Petitioner/Cross–Respondent,

v.

Joe VIGIL, Respondent/Cross–Petitioner.

No. 04SC532.

Supreme Court of Colorado,
En Banc.

Jan. 23, 2006.

Rehearing Denied Feb. 13, 2006.*

* Justice MARTINEZ and Justice BENDER would grant the Respondent/Cross-Petitioner's Petition.

John Suthers, Attorney General, Karen E. Lorenz, Anthony J. Navarro, Lauren Edelstein Park, Assistant Attorneys General, Appellate Division, Denver, for Petitioner/Cross–Respondent.

David S. Kaplan, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, for Respondent/Cross–Petitioner.

RICE, Justice.

Joe E. Vigil was convicted of sexual assault on a child. The child did not testify at trial. Over defense objection, the trial court admitted statements the child made to his father and his father's friend, statements the child made to the doctor who performed the sexual assault examination, and a videotape of statements the child made during a police interview. At the close of the evidence, the trial court provided the jury with an instruction that read, "Intoxication of the accused is not a defense to a criminal charge."

The court of appeals held that admission of the child's videotaped police interview violated the defendant's federal constitutional right to confront the witnesses against him and that the erroneous admission was not harmless. *People v. Vigil,* 104 P.3d 258, 263–65 (Colo.App.2004). On this ground, the court of appeals reversed Vigil's conviction and remanded the case for a new trial. *Id.* at 268. The court of appeals also examined the child's other hearsay statements and the intoxication jury instruction because the issues were likely to arise on retrial. *Id.* at 265.

We granted certiorari.[1] Upon review, we hold that admission of the child's statements to the doctor and the child's statements to his father and his father's friend did not deprive Vigil of his federal and state constitutional rights to confront the witnesses against him. In addition, we hold that admission of the child's videotaped police interview was not plain error. Finally, we hold that the trial court did not err in instructing the jury that "intoxication of the accused is not a defense to a criminal charge." Accordingly, we reverse in part and affirm in part

the decision of the court of appeals and reinstate Vigil's conviction.

## I. Factual and Procedural History

Defendant Vigil and John Kohl were visiting the home of Brett Brown. All the men were drinking alcohol. While Brown and Kohl were on the internet, Vigil sat in another room and played a game with Brown's seven-year-old son, JW, the victim in this case.

At some point, Vigil and the child moved into the child's bedroom. Around 10:00 p.m., the child's father went to check on Vigil and the child. When the father attempted to open the bedroom door, he encountered resistance. The father pushed his head into the room and saw Vigil positioned over the child. Vigil and the child both were partially undressed, and the father saw "skin to skin" contact. While the father comforted his child, Vigil fled the house. The child, who had tears in eyes and appeared scared and confused, told his father that Vigil "stuck his winkie in his butt" and that his "butt hurt."

Upon hearing this, the father ran outside after Vigil and watched Vigil run down the street, simultaneously pulling up his pants. Next, the child's father called 911. While the father was on the phone, Kohl, the father's friend, observed the child curled up, crying, and shaking. The father's friend asked the child if he were hurt. Two or three times the child told his father's friend that his "butt hurt."

A police officer responding to the father's call saw Vigil walking on a sidewalk near the father's home. When the police officer stepped out of his car, Vigil pulled out a knife and held it to his own throat. When the officer asked Vigil what he was doing, Vigil

---

1. We granted certiorari on the following issues:
 1. Whether a child victim's statements to a treating physician during a sexual assault examination constitute "testimonial" evidence pursuant to *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
 2. Whether the crime of child sexual assault encompasses a specific intent mental state, thereby entitling a defendant charged with that crime to an intoxication instruction, even though the statute defining the offense uses the term "knowingly."

 3. Whether the court of appeals misapprehended harmless error analysis when it determined that the admission of the child victim's videotaped police interview was not harmless beyond a reasonable doubt.
 4. Whether the court of appeals erred in holding that admission of the alleged victim's hearsay statements to his father and his father's friend did not violate the cross-petitioner's constitutional right of confrontation where the child was unavailable to testify at trial.

responded, "I done bad." Then Vigil stabbed himself in the throat and chest. At the hospital, Vigil told emergency room personnel that he wanted to die and that he "did a bad thing."

Later, the child and his mother went to the hospital with another police officer. Around 3:00 a.m. the police officer asked a doctor to perform a victim sexual assault kit. Before examining the child, the doctor spoke with the police officer to learn why the child was at the hospital and how law enforcement was involved. Next, the doctor performed a forensic sexual abuse examination on the child. When the doctor asked the child whether anyone had hurt him, the child said that someone had hurt him. When the doctor asked if the child felt pain, the child said, "It felt like a poop." During the examination, the doctor found bruising around the child's anus, and he took an anal swab. A forensic scientist analyzed the swab and discovered the presence of semen but did not identify the source of the semen. A few days after the alleged assault, a police officer conducted a videotaped interview of the child.

The People subsequently charged Vigil with one count of sexual assault on a child. After hearing argument and testimony on a number of pretrial motions, the trial court made the following rulings: 1) the child was unavailable to testify at trial; 2) the child's statements to his father that Vigil "stuck his winkie in his butt" and that his "butt hurt" as well as the child's statement to his father's friend that his "butt hurt" were admissible as excited utterances; 3) the child's statement to the doctor indicating that he was hurt by a man was admissible under the hearsay exception for statements made for purposes of medical diagnosis and treatment; 4) relevant portions of the child's videotaped interview with the police officer were admissible pursuant to section 13–25–129, C.R.S. (2005), the hearsay exception for Statements of a Child Victim of Unlawful Sexual Offense Against a Child or of Child Abuse.

At the trial, the doctor testified that the child's history and physical exam were consistent with attempted anal intercourse. At the close of the evidence, the trial court provided the jury with an instruction that read, "Intoxication of the accused is not a defense to a criminal charge." The jury found Vigil guilty of sexual assault on a child.

On appeal Vigil argued that the trial court violated his constitutional right of confrontation by admitting the child's videotaped police interview, the child's statements to his father and his father's friend, and the child's statements to the doctor. Vigil also argued that sexual assault on a child is a specific-intent crime to which voluntary intoxication is a defense.

In *People v. Vigil*, 104 P.3d 258 (Colo.App. 2004), the court of appeals reversed Vigil's conviction. Addressing the constitutional challenges, the court of appeals examined *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and determined that, regardless of a statement's reliability, a trial court may not admit a non-testifying witness's out-of-court testimonial statements against an accused unless the witness is unavailable and the accused had a prior opportunity for cross-examination. *Vigil*, 104 P.3d at 261–62 (citing *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354).

The court of appeals found that the child's videotaped statements to the police constituted testimonial hearsay because the child made the statements in response to structured police questioning, which qualified as police interrogation within *Crawford's* discussion of testimonial evidence. *Vigil*, 104 P.3d at 262. Consequently, the court held that the trial court erred in admitting the child's videotaped police interview where Vigil had not had an opportunity to cross-examine the child. *Id.* at 264. Next, the court applied a constitutional harmless error analysis and held that admission of the child's videotaped statements constituted reversible error because the statements provided the most detailed account of the incident and because the videotape allowed the jurors to hear from the child. *Id.*

Because Vigil's other arguments involved issues likely to arise on retrial, the court of appeals examined two additional confrontation issues involving the child's statements to his father, his father's friend, and the doctor. First, the court found that the trial court

properly admitted the child's statements to his father and his father's friend. *Id.* at 265. Noting these statements were not solemn or formal and were made to persons unassociated with government activity, the court determined that the statements were non-testimonial and that by admitting them the trial court did not violate Vigil's federal constitutional rights. *Id.* Then the court applied the analysis set forth in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), and *People v. Dement,* 661 P.2d 675 (Colo.1983), to determine whether the trial court violated Vigil's confrontation rights under the state constitution. The court determined that there was no state confrontation clause violation because the child was unavailable and the statements fell under the firmly rooted excited utterance exception to the hearsay rule. *Vigil,* 104 P.3d at 265.

Next, the court of appeals concluded that the trial court erred by admitting the child's statements to the doctor. *Vigil,* 104 P.3d at 265. Emphasizing that the doctor spoke with a police officer before eliciting the statements, that he was not a person unassociated with government activity, and that he "necessarily understood that the information he obtained would be used in a subsequent prosecution for child abuse," the court concluded that the child's statements to the doctor were testimonial. *Id.* Finally, the court held that the trial court erred in instructing the jury that "intoxication of the accused is not a defense to a criminal charge." *Id.* at 267.

Petitioner and Cross–Petitioner sought further review, and we granted certiorari.

## II. The Hearsay Issues

■ In *Crawford v. Washington,* the United States Supreme Court held that admitting testimonial hearsay at trial, absent the unavailability of the declarant and a prior opportunity for cross-examination by the defen-

dant, violates the accused's confrontation right under the Sixth Amendment to the United States Constitution. 541 U.S. at 68, 124 S.Ct. 1354; *Compan v. People,* 121 P.3d 876, 880 (Colo.2005).

The *Crawford* majority did not adopt a precise definition of the term "testimonial." 541 U.S. at 68, 124 S.Ct. 1354; *Compan v. People,* 121 P.3d 876, 880 (Colo.2005). The Court, however, did provide some guidance. Specifically, *Crawford* held that, at a minimum, statements are testimonial if the declarant made them at a "preliminary hearing, before a grand jury, or at a former trial; and [in] police interrogations." *Id.* Beyond this explicit guidance, the Supreme Court discussed three formulations of statements that might qualify as testimonial, namely: 1) "ex parte in-court testimony or its functional equivalent-that is material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"; 2) "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony or confessions"; and 3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford,* 541 U.S. at 51–52, 124 S.Ct. 1354 (internal citations omitted); *Compan,* 121 P.3d at 880.

### 1. The Child's Statements to the Doctor

■ We start our analysis by determining whether the child's statements to the doctor [2] are testimonial in nature, and specifically, whether the statements fit into any of the clearly proscribed areas of testimonial evidence, as delineated by *Crawford.* 541 U.S. at 68, 124 S.Ct. 1354. Clearly, the child did not make his statements in the course of a

---

**2.** During the trial, the prosecution elicited the following testimony:

Prosecution: As part of this history, did you ask [the child] whether he was hurt?
Doctor: I did.
Prosecution: Did he give you an answer?
Doctor: He did. He said, yes, he was hurt.
Prosecution: Did you ask whether or not a thing or person had hurt him?

Doctor: I asked, Did anyone hurt you? And he said that someone had hurt him.
Prosecution: Okay. What other questions did you ask [the child] as part of this history?
Doctor: I asked him if he had felt anything wet when he had gotten hurt, and he had said, "No." And I asked him if he felt pain, if it had hurt him, and he said ...—"It felt like a poop" is—is his direct quote.

preliminary hearing, in front of a grand jury, or at a prior trial; therefore, these formulations of testimonial evidence are not at issue. However, the defendant contends that the child made his statement in the course of a police interrogation, the fourth clearly defined area of testimonial evidence in *Crawford*, and therefore the statements are testimonial in nature.

## A. Police Interrogation

Ordinarily, if a law enforcement official is involved during the course of questioning, such questioning would be considered a "police interrogation." [3] Because the questioning in this case was done by a doctor as a part of a sexual assault examination, we must decide whether this questioning constituted police interrogation. Unfortunately, we are not helped in our determination of this issue by *Crawford*, as the Court explained that it used the term "interrogation" in a colloquial sense and noted that "one can imagine various definitions of interrogation." *Crawford*, 541 U.S. at 53 n. 4, 124 S.Ct. 1354 ("[W]e need not select among [the various definitions of interrogation] in this case.").

This dicta does suggest, however, that police "interrogation" may extend beyond the type of structured police questioning at issue in *Crawford*, particularly in light of *Crawford*'s stated concern that the "[i]nvolvement of government officers in the production of

testimony with an eye toward trial presents a unique potential for prosecutorial abuse." 541 U.S. at 56 n. 7, 124 S.Ct. 1354.[4]

We must determine, therefore, whether the doctor's questioning, as part of a sexual assault examination, constituted the functional equivalent of police interrogation. In light of the concerns stated in *Crawford*, we examine first, whether and to what extent government officials were involved in producing the statements and second, whether their purpose was to develop testimony for trial.

Courts from other jurisdictions which have considered this issue are divided in their conclusions. The supreme courts in Oregon and Maryland have analyzed this issue and determined that questioning by social workers, at the behest of the police, constitutes police interrogation and that, therefore, the Confrontation Clause bars the testimony. Specifically, in *State v. Mack*, 337 Or. 586, 101 P.3d 349 (2004), a social worker acted at the direction of the police when she interviewed a three-year-old witness and the police videotaped the interview. 101 P.3d at 349–50. The social worker explained that she primarily intended the interview to aid law enforcement in completing their investigation. *Id.* at 350. The trial court found that the social worker acted as an agent of the police and that the social worker interviewed the child in a manner structured to obtain information for the state's use in pros-

---

**3.** *See, e.g., Hammon v. Indiana*, 829 N.E.2d 444, 457 (Ind.2005), *cert. granted*, —— U.S. ——, 126 S.Ct. 552, 163 L.Ed.3d 459 (2005) ("[A] police interrogation is properly limited to attempts by police to pin down and preserve statements rather than efforts directed to determining whether an offense has occurred, protection of victims or others, or apprehension of a suspect.").

**4.** *See Crawford*, 541 U.S. at 58 n. 8, 124 S.Ct. 1354 (noting that *White v. Illinois*, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), is "arguably in tension with the rule requiring a prior opportunity for cross-examination when the proffered statement is testimonial"). In *White*, where the defendant had not had a prior opportunity to cross-examine the non-testifying four-year-old sexual assault victim, the Supreme Court held that the Sixth Amendment did not require the trial court to find the child unavailable before the trial court could admit hearsay statements that the child addressed to her baby sitter, her mother, an investigating police officer,

and a doctor. *White*, 502 U.S. at 357, 112 S.Ct. 736. *Crawford* only notes tension with *White* in regard to the statements the child made to the investigating police officer. 541 U.S. at 58 n. 8, 124 S.Ct. 1354. This implies that the statements the child victim made to the police officer were testimonial but the statements the child made to the doctor, which the trial court admitted as statements made in the course of securing medical treatment, were not testimonial. *See also United States v. Bordeaux*, 400 F.3d 548 (8th Cir.2005) (holding child statements during forensic interview set up by law enforcement were testimonial); *Bockting v. Bayer*, 399 F.3d 1010, amended, 408 F.3d 1127 (9th Cir.2005) (holding statements in detective's interview with six-year-old were testimonial); *T.P. v. State*, 911 So.2d 1117 (Ala.Crim.App.2004) (holding child's statements to sheriff's investigator and social worker were testimonial); *Blanton v. State*, 880 So.2d 798 (Fla.Dist.Ct.App.2004) (noting that the state conceded the child's audiotape statement to police investigator was testimonial).

ecuting the defendant. *Id.* The Oregon Supreme Court recognized this as the functional equivalent of police interrogation and thus found that the statements were testimonial. *Id.* at 354. We agree with this outcome. An application of *Crawford's* concerns regarding the extent of government involvement and the purpose of the questioning yields only one result—the social worker functioned as an agent of the police.

Similarly, in *State v. Snowden,* 385 Md. 64, 867 A.2d 314 (2005), the police asked a social worker who specialized in sexual abuse to interview three child victims. *Id.* at 316. The social worker began the interview with a police report in hand; a detective was present during the interview, and the children were aware of the detective's presence. *Id.* at 326, 327. The trial court found, "the children were interviewed for the express purpose of developing testimony ... in a sexual abuse trial." *Id.* at 326. The Maryland Supreme Court held that these circumstances rendered the interview functionally equivalent to formal police questioning.[5] *Id.* at 325. Again, we agree with this result.

In addition, courts which have analyzed the police interrogation issue in terms of questioning by doctors have reached the opposite conclusion, reasoning that a doctor is questioning the child for the purpose of providing a diagnosis and treatment, rather than eliciting the child's testimony for trial. *See State v. Krasky,* 696 N.W.2d 816 (Minn.Ct. App.2005) (holding that statements made by a child victim to a medical professional are not testimonial if the circumstances under which the statements were made would not lead the child, or a reasonable child of her age, to believe that the statements would be available for use at a later trial) *cert. granted,* (Minn. Aug. 16, 2005); *State v. T.T.,* 351 Ill.App.3d 976, 287 Ill.Dec. 145, 815 N.E.2d 789 (2004) (holding that statements a child victim made to a physician describing the cause of symptoms or pain or the general character of the assault were not testimonial in nature); *State v. Vaught,* 268 Neb. 316, 682 N.W.2d 284 (2004) (holding that a statement a child victim made to a physician, which was properly admitted under the medical diagnosis or treatment exception, was not testimonial); *People v. Geno,* 261 Mich.App. 624, 683 N.W.2d 687 (2004), cert. denied, 471 Mich. 921, 688 N.W.2d 829 (2004) (holding a child's response to an interviewer who was not a government employee was not testimonial).

Although each factual situation must be judged on its own merits, the facts of this case are more like those in the cases where courts found a child's statements to a doctor to be non-testimonial. As the doctor testified at trial, his purpose in questioning the child was to determine whether the child would "say something that could help [the medical personnel] understand what the potential injuries were." The child's responses helped the doctor develop his opinion regarding whether a sexual assault had occurred and how best to treat the child. Thus, rather than being an agent of the police, the doctor's job involved identifying and treating sexual abuse. The fact that the doctor was a member of a child protection team does not, in and of itself, make him a government official absent a more direct and controlling

---

**5.** The Maryland court reached its conclusion by applying a different test for determining whether or not there was a police interrogation than that set forth in *Crawford.* Specifically, they held, "if a statement is made under such circumstances that would lead an objective person to believe that statements made in response to government interrogation later would be used at trial, the admission of those statements must be conditioned upon *Crawford's* requirements of unavailability and a prior opportunity to cross-examine." *State v. Snowden,* 385 Md. 64, 867 A.2d 314, 330 (2005). A close reading of *Crawford,* however, suggests that it is appropriate to first determine, based on the circumstances of the encounter, whether there was a police interrogation. This determination would include an analysis of whether and to what extent government officials were involved in producing the statements and whether their purpose was to develop testimony for trial. If it is determined that there was no police interrogation, then *Crawford* instructs that the hearsay statement should be further evaluated to analyze whether the statement falls into the "core class" of statements which may be testimonial under certain circumstances—such as statements an objective witness would reasonably believe would be available for use at a later trial. *See infra* section 1B. Separating *Crawford's* explicit holding with respect to police interrogation from its dicta regarding the core class of possible testimonial statements follows the structure and reasoning of *Crawford.*

police presence, such as the presence demonstrated in *Mack*, 337 Or. 586, 101 P.3d 349 (2004), and *Snowden*, 385 Md. 64, 867 A.2d 314 (2005). In fact, the police officer in the instant case testified that she was not involved in the medical examination or in the room when the doctor performed the examination.

Moreover, even though the trial court analyzed the issue under the Rules of Evidence and not under *Crawford*, the same factors that led the trial court to rule that the child's statements to the *doctor* were admissible as statements made for the purpose of medical diagnosis and treatment under CRE 803(4) are helpful to our determination that the doctor did not purport to develop testimony for trial but rather intended to gather information in order to reach a medical diagnosis. Specifically, the trial court found that "a doctor making a diagnosis of sexual penetration would need a history to rule out other causes for the perianal bruising and redness. Once the doctor learned that JW had been hurt by a penis, he could reasonably form the opinion that the bruising was caused by sexual penetration."

In addition, even though the trial court analyzed the issue under the Rules of Evidence, the trial court carefully distinguished between those aspects of the examination which were diagnostic in nature and those aspects which could arguably be labeled investigatory. Thus, the trial court noted that the child's statements specifically referring to Vigil by name were not admissible under CRE 803(4) because the identity of the male who penetrated the child was immaterial to the doctor's opinion.

In sum, we hold that the doctor's questioning of the child during the course of the medical examination did not constitute the functional equivalent of police interrogation. The doctor was not a government official who produced the child's statements with a purpose of developing testimony for trial, nor was the police officer involved in producing the statements with a purpose of developing testimony for trial. Accordingly, we conclude that, under *Crawford*'s explicit guidance, the child's statements to the doctor are not testimonial evidence.

## B. The Objective Witness Test

Even though the child's statements were not the product of police interrogation and therefore are not clearly testimonial according to *Crawford*, we must also determine whether the child's statements fall into one of the three formulations of the "core class" of testimonial statements at which the Confrontation Clause was directed and are therefore testimonial. *Crawford*, 541 U.S. 36, 51–52, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In this regard, Vigil argues that these statements are testimonial because the child made the statements to the doctor under circumstances which would have led an objective witness reasonably to believe that the statements would be available for use at a later trial. *Id.* at 52, 124 S.Ct. 1354. In addition, Vigil argues that the phrase "objective witness" must be defined as an objectively reasonable adult observer educated in the law. The People disagree with this construction and argue that the phrase "objective witness" should be defined as an objectively reasonable person in the position of the declarant.

Based on our reading of *Crawford* and our review of other courts deciding this issue, we hold that the "objective witness" language in *Crawford* refers to an objectively reasonable person in the declarant's position. Applying this test to the instant case, we determine that an objectively reasonable person in the declarant's position would not have believed that his statements to the doctor would be available for use at a later trial.

We first discuss our holding that the term "reasonable, objective witness" refers to an objectively reasonable person in the declarant's position. This holding is consistent with the *Crawford* majority's reference identifying a hearsay statement from *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), as non-testimonial. *Crawford*, 541 U.S. at 58, 124 S.Ct. 1354. In *Dutton*, the declarant was the defendant's co-conspirator, and he made a statement to his cell mate blaming the defendant for his predicament. 400 U.S. at 87–89, 91 S.Ct. 210. The Supreme Court characterized this statement as spontaneous and against penal interest.

*Id.* at 89, 91 S.Ct. 210. If the *Crawford* Court had intended the objective witness test to be applied from the perspective of an objectively reasonable observer educated in the law,[6] the *Crawford* Court would have labeled the co-conspirator's statement "testimonial." However, by labeling the statement non-testimonial, *Crawford* directs us to apply the objective witness test from the perspective of an objectively reasonable person in the declarant's position.[7]

In addition, we are mindful of the concern expressed in *Crawford* to safeguard an accused's confrontation right. Like the United States Tenth Circuit Court of Appeals in *United States v. Summers*, 414 F.3d 1287 (10th Cir.2005), however, we believe that an objective test focusing on the reasonable expectations of a person in the declarant's position under the circumstances of the case most adequately safeguards the accused's confrontation right and most closely reflects the concerns underpinning the Sixth Amendment. *Summers*, 414 F.3d at 1302; *See* Richard D. Friedman, *Confrontation: The Search for Basic Principles*, 86 Geo. L.J. 1011, 1040–43 (1998). This is because the "common nucleus" shared by the Supreme Court's three formulations of testimonial evidence, *Crawford*, 541 U.S. at 52, 124 S.Ct. 1354, centers upon the declarant's reasonable expectations. *Summers*, 414 F.3d at 1302. Thus, as noted by the Tenth Circuit, "it is the reasonable expectation that a statement may be later used at trial that distinguishes the flippant remark, proffered to a casual acquaintance, from the true testimonial statement." *Id.* (citing *Crawford* 541 U.S. at 51, 124 S.Ct. 1354). Accordingly, we find the holding in *Summers*—namely that "a statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime"—persuasive. *Id.* We also find persuasive the numerous other courts which have held likewise. *See United States v.*

*Saget*, 377 F.3d 223, 228 (2d Cir.2004) ("*Crawford* at least suggests that the determinative factor in determining whether a declarant bears testimony is the declarant's awareness or expectation that his or her statements may later be used at trial."); *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir.2004) ("The proper inquiry, then, is whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime."); *State v. Hembertt*, 269 Neb. 840, 696 N.W.2d 473, 482 (2005) ("[T]he determinative factor in determining whether a declarant bears testimony is the declarant's awareness or expectation that his or her statements may later be used at a trial."); *State v. Davis*, 364 S.C. 364, 613 S.E.2d 760, 779 (Ct.App.2005) (inquiring whether a reasonable speaker in the declarant's position would believe the statements would be available for use at a later trial).

Further, we note with approval the formulation of the objective witness test that our court of appeals stated in *People v. Sharp*, — P.3d —, 2005 WL 2877807, at *5 (Colo. App. Nov.3, 2005) ("[T]he test in determining whether the child's statement is testimonial depends on whether an objective person in the child's position would believe her statements would lead to punishment of defendant.").

Based upon our review of these cases, an assessment of whether or not a reasonable person in the position of the declarant would believe a statement would be available for use at a later trial involves an analysis of the expectations of a reasonable person in the position of the declarant. Expectations derive from circumstances, and, among other circumstances, a person's age is a pertinent characteristic for analysis. *See Lagunas v. State*, — S.W.3d —, 2005 WL 2043678 (Tex.App. Aug.26, 2005) (considering child

---

6. An objectively reasonable observer educated in the law might have foreseen the prosecution using the co-conspirator's statement against interest in court.

7. In labeling the statement non-testimonial, the Supreme Court implied that an objectively reasonable person in the declarant's position would not have foreseen the prosecution using his statement in court because, if he had, he would not have made the self-incriminatory statement.

declarant's age as a circumstance relevant to the inquiry of whether the child's statement constituted testimonial evidence); *State v. Scacchetti*, 690 N.W.2d 393 (Minn.Ct.App. 2005) (holding that admission of a three-year-old victim's out-of-court statements made to an examining physician did not violate the defendant's right of confrontation where the circumstances surrounding the statements would not lead "a reasonable child of her age to have that expectation") *cert. granted* (Minn. March 29, 2005). Other factors for consideration may include whether an objectively reasonable child would be aware of government involvement and whether an objectively reasonable child would be aware that the defendant faces the possibility of criminal punishment.

Turning now to the application of the objective witness test to the statements the child made to the doctor, we analyze the circumstances surrounding the statements to determine whether an objective witness in the position of the child would believe that his statements would be used at trial. We hold that no objective witness in the position of the child would believe that his statements to the doctor would be used at trial. Rather, an objective seven-year-old child would reasonably be interested in feeling better and would intend his statements to describe the source of his pain and his symptoms. In addition, an objectively reasonable seven-year-old child would expect that a doctor would use his statements to make him feel better and to formulate a medical diagnosis. He would not foresee the statements being used in a later trial.

Thus, from the perspective of an objective witness in the child's position, it would be reasonable to assume that this examination was only for the purpose of medical diagnosis, and not related to the criminal prosecution. No police officer was present at the time of the examination, nor was the examination conducted at the police department. The child, the doctor, and the child's mother were present in the examination room.[8]

Accordingly, we reverse the court of appeals and conclude that the child's statements to the doctor were not testimonial.

**C. Admission of the Child's Non–Testimonial Statements to the Doctor under the Federal Confrontation Clause**

In *Compan v. People*, we held that "the constitutionality of non-testimonial statements is controlled by the federal confrontation clause as set forth in *Roberts.*" 121 P.3d 876, 882 (Colo.2005) (discussing *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)). Since we find that the child's statements to the doctor are non-testimonial, we must next apply *Roberts*. To satisfy the *Roberts* test, the child's statements must bear sufficient indicia of reliability by falling within a "firmly rooted hearsay exception" or bearing "particularized guarantees of trustworthiness." *Roberts*, 448 U.S. at 66, 100 S.Ct. 2531. A statement made for the purpose of medical diagnosis or treatment qualifies as a firmly rooted exception to the hearsay rule. *White v. Illinois*, 502 U.S. 346, 356 n. 8, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992). Where a firmly rooted hearsay exception is at issue, reliability is implied and it is not necessary for the declarant to be unavailable. *Id.* at 354–57, 112 S.Ct. 736 (citing, inter alia, *United States v. Inadi*, 475 U.S. 387, 394–99, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986)).

Vigil argues that the prosecution failed to meet its burden of proving that the child's statements to the doctor satisfied the hearsay exception for statements made for purposes of medical diagnosis or treatment. Specifically, Vigil implies that the prosecution had a burden to support the child's statements to the doctor through some independent demonstration of trustworthiness. We conclude otherwise.

Colorado Rule of Evidence 803(4) excepts from the hearsay rule "statements made for purposes of medical diagnosis or

8. We emphasize that the objective witness test involves an analysis separate from and in addition to the police interrogation test. For example, if a child makes a statement to a government agent as part of a police interrogation, his statement is testimonial irrespective of the child's expectations regarding whether the statement will be available for use at a later trial. *See supra* note 4.

treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." CRE 803(4) (2005). The exception includes a party's statement to a non-treating physician for purposes of diagnosis in connection with pending criminal litigation. *King v. People*, 785 P.2d 596, 602 (Colo.1990). It is not necessary for the proponent of hearsay to offer an independent demonstration of trustworthiness. *Id.* Under the rule, once the proponent establishes that the statements were made to a physician for purposes of diagnosis or treatment, that the statements were reasonably pertinent to diagnosis or treatment, and that the physician relied on the statements in reaching an expert opinion, then the statements qualify for admission without regard to an independent demonstration of trustworthiness. *Id.* at 603.

In its written order, the trial court found all the facts necessary to admit the child's statements to the doctor as statements made for purposes of medical diagnosis or treatment. Those facts include the following: the child's mother and the police officer took the child to the doctor so that he could offer a diagnosis regarding whether the child was sexually assaulted; the statements regarding the history as to where the child was hurt were reasonably pertinent to diagnosing the cause of the child's bruising and redness; the doctor relied on the statements in reaching the opinion that the child had been hurt by a penis. Therefore, the trial court properly found that the history the doctor elicited from the child was admissible under CRE 803(4) and that the People provided an adequate foundation.

Accordingly, we conclude that the child's statements for purposes of medical diagnosis and treatment bore sufficient indicia of reliability. Admission of these statements did not violate Vigil's federal constitutional right to confront the witnesses against him.

### D. Admission of the Child's Non–Testimonial Statements to the Doctor under the Colorado Confrontation Clause

 Next, we must determine whether the admission of the child's non-testimonial statements to the doctor offended the Colorado Confrontation Clause. The test announced in *People v. Dement*, 661 P.2d 675 (Colo.1983), controls this inquiry. *Compan v. People*, 121 P.3d 876, 885 (Colo.2005). To admit non-testimonial evidence when the defendant has not had a prior opportunity for cross-examination, the prosecution must show that the declarant is unavailable and the statement bears sufficient indicia of reliability. *Dement*, 661 P.2d at 679–81 (citing *Roberts*, 448 U.S. at 65, 100 S.Ct. 2531); *see Compan*, 121 P.3d at 885 (applying the unavailability prong, but declining to consider whether unavailability is still required under the state constitution).

The child's statements to the doctor satisfy the *Dement* test. Neither party disputes the trial court's ruling that the child was incompetent to testify and consequently unavailable at trial. In the preceding section we determined that the child's statements to the doctor fell within a firmly rooted exception to the hearsay rule, statements for purposes of medical diagnosis or treatment, CRE 803(4). Accordingly, admission of the child's statements to the doctor did not violate Vigil's state constitutional right to confront the witnesses against him.

### 2. The Child's Statements to the Father and the Father's Friend

 Vigil argues the child's statements to his father and his father's friend are testimonial and, therefore, the trial court violated his federal constitutional right to confrontation because he did not have a prior opportunity to cross-examine the child. To address this argument, we must determine whether the child's excited utterances to the father and the father's friend are testimonial statements.

### A. The Child's Statements to his Father and his Father's Friend Are Not Testimonial

Under the explicit guidance of *Crawford v. Washington*, the child's statements to his father and his father's friend do not constitute testimonial evidence because the child

did not make the statements at a preliminary hearing, before a grand jury, at a former trial, or during a police interrogation. 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The facts do not suggest that any government officials were involved when the child made the statements to his father and his father's friend; thus, we need not further examine whether the situation presented the dangers of police interrogation.

Next, we examine the child's statements under *Crawford*'s other three formulations of potentially testimonial evidence. 541 U.S. at 51–52, 124 S.Ct. 1354. Like the statements to the doctor, the child's statements to his father and his father's friend clearly do not fall within the first two formulations of testimonial evidence. The child did not make the statements to his father and his father's friend ex parte, in an affidavit, a custodial examination, prior testimony that Vigil was unable to cross-examine, or a pretrial statement that the child would reasonably expect to be used prosecutorially. The statements were not formal extrajudicial statements made in an affidavit, a deposition, prior testimony, or a confession.

Finally, we analyze the statements under the third formulation in an effort to determine whether an objectively reasonable witness in the child's position would believe that his statement would be used at a later trial. When the child made these statements, he was at home speaking informally to his father and his father's friend. An objectively reasonable seven-year-old boy would make statements expressing pain and explaining what had happened with an interest in seeking comfort and help. The facts do not indicate the child was making these statements in an attempt to develop testimony for trial.

Similarly, nothing in the circumstances surrounding the making of the statements would suggest that the child's father or the child's father's friend were questioning the boy with a view toward developing testimony. To an objectively reasonable seven-year-old child, it would appear that the child's father and the father's friend were interested in learning what happened, determining whether the child was hurt, and comforting the child. An objectively reasonable seven-year-old child would foresee his father and his father's friend using his statements to comfort and protect him.

In sum, since the child's statements were not made under circumstances which would lead an objectively reasonable seven-year-old boy to believe that his statements would be available for use at a later trial, the child's statements are not testimonial. *Compan v. People*, 121 P.3d 876, 880–81 (Colo.2005) (holding that a victim's excited utterances were non-testimonial where the victim was speaking informally to her friend); *See Purvis v. State*, 829 N.E.2d 572, 579 (Ind.Ct.App. 2005) (holding that a ten-year-old victim's excited utterances were non-testimonial where the victim made the statements in response to his mother's boyfriend's questions posed immediately after the sexual abuse occurred); *Horton v. Allen*, 370 F.3d 75, 84 (1st Cir.2004) (finding that, where the declarant made statements during a private conversation between private individuals, the declarant did not make the statements under circumstances in which an objective person would reasonably believe that the statement would be available for use at a later trial).

**B. Admission of the Child's Non–Testimonial Statements to the Father and the Father's Friend under the Federal Confrontation Clause**

 Because the child's statements to his father and his father's friend are non-testimonial, we must assess whether the statements bear sufficient indicia of reliability to satisfy the federal Confrontation Clause. *Compan*, 121 P.3d at 882 (citing *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)). As discussed above, a hearsay statement that falls within a firmly rooted exception satisfies this test. *Id.* An excited utterance is a firmly rooted hearsay exception. *White v. Illinois*, 502 U.S. 346, 356–57 n. 8, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992). Where an excited utterance is at issue, reliability is implied and it is not necessary for the declarant to be unavailable. *Id.* at 354–57, 112 S.Ct. 736 (citing, inter alia, *United States v. Inadi*, 475 U.S. 387, 394–99, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986)).

Vigil does not contest the trial court's determination that the child's statements to his father and his father's friend constitute excited utterances. Therefore, we conclude that the child's excited utterances bore sufficient indicia of reliability and that admission of these statements did not violate Vigil's federal constitutional right to confront the witnesses against him.

**C. Admission of the Child's Non–Testimonial Statements to the Father and the Father's Friend under the Colorado Confrontation Clause**

 Next, we must determine whether the admission of the child's non-testimonial statements to his father and his father's friend offended the Colorado Confrontation Clause. As stated above, the test announced in *People v. Dement*, 661 P.2d 675 (Colo. 1983), controls this inquiry. *Compan*, 121 P.3d at 885. To admit non-testimonial evidence when the defendant has not had a prior opportunity for cross-examination, the prosecution must show that the declarant is unavailable and the statement bears sufficient indicia of reliability. *Dement*, 661 P.2d at 679–81.

The child's statements to his father and his father's friend satisfy the *Dement* test because the child was unavailable to testify and the statements fell within a firmly rooted exception to the hearsay rule, the excited utterance exception, CRE 803(2). Accordingly, admission of the child's statements to his father and his father's friend did not violate Vigil's state constitutional right to confront the witnesses against him.

**III. Admission of the Child's Testimonial Statements in the Videotaped Police Interview**

The People argue that the court of appeals erred in holding that admission of the child's

testimonial statements in the videotaped police interview was not harmless beyond a reasonable doubt. We begin our analysis by determining under which standard we review the trial court's constitutional error.

 Two types of constitutional error exist, structural error and trial error. *People v. Miller*, 113 P.3d 743, 749 (Colo.2005); *Neder v. United States*, 527 U.S. 1, 8–9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). Structural errors are "defects affecting the framework within which the trial proceeds," and they require automatic reversal. *Id.* (quoting *Neder*, 527 U.S. at 8, 119 S.Ct. 1827). Trial errors are "errors in the trial process itself," and reviewing courts may apply either harmless error or plain error analysis. *Miller*, 113 P.3d at 749 (citing *Neder*, 527 U.S. at 8–9, 119 S.Ct. 1827). When a defendant alleges a trial error, we review the error under the harmless beyond a reasonable doubt standard if the defendant preserved his claim for review by raising a contemporaneous objection. *Miller*, 113 P.3d at 745; *see People v. Fry*, 92 P.3d 970, 973 (Colo.2004) (reviewing the erroneous admission of testimonial evidence under the harmless beyond a reasonable doubt standard where at trial the defendant had objected on Confrontation Clause grounds). When a defendant who failed to raise a contemporaneous objection alleges a trial error, we apply the plain error standard of review. *Miller*, 113 P.3d at 745.

 Confrontation Clause violations are trial errors. *Fry*, 92 P.3d at 980. At trial Vigil did not argue that admission of the videotaped interview violated his rights under the Confrontation Clause. *People v. Vigil*, 104 P.3d 258, 263 (Colo.App.2004). Therefore, we review admission of the videotape for plain error.[9] Plain error review address-

---

9. Many other courts have applied the plain error standard of review where at trial the defendant failed to object on Confrontation Clause grounds. *See United States v. Logan*, 419 F.3d 172, 177 (2d Cir.2005) (reviewing the trial court's decision for plain error where the defendant objected to the admission of testimonial statements on hearsay grounds but did not raise a Sixth Amendment objection at trial); *United States v. Solomon*, 399

F.3d 1231, 1237–38 (10th Cir.2005) (concluding, where the defendant failed to object to the admission of testimonial evidence on Confrontation Clause grounds but did object on hearsay grounds, that "where a Confrontation Clause objection is not explicitly made below we will not address the constitutional issue in the absence of a conclusion that it was plain error for the district court to fail to raise the constitutional error

es obvious and substantial error, and the defendant bears the burden of persuasion. *Miller,* 113 P.3d at 750; *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Errors that so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction constitute plain error. *Id.*

■ In this case, the People presented the following evidence which provided the jury a basis, apart from the videotaped statement, for finding Vigil guilty of sexual assault on a child: 1) the child's father saw Vigil and the child in a position that strongly suggested sexual assault; 2) the child made accusatory statements to his father, describing how Vigil hurt him, and made statements to both his father and his father's friend describing where he was hurt; 3) after fleeing the child's father's home, Vigil told the police officer, "I done a bad thing" and then stabbed himself in the throat and chest; 4) at the hospital Vigil told emergency room personnel that he wanted to die and that he "did a bad thing"; 5) the child told the doctor that someone had hurt him and described how it felt when he was hurt; 6) after examining the child, the doctor concluded that the history and physical exam were consistent with attempted anal intercourse; 7) the serology lab found a large amount of spermatozoa on the anal swab that the doctor took when he examined the child.

The court of appeals noted that the defense impeached the testimony of the father and the father's friend with evidence the men had been drinking alcohol and that Vigil's statements to the police and medical person-

nel were not inconsistent with the defense's theory that no completed act of sexual assault occurred. *Vigil,* 104 P.3d at 264. However, the videotape was not the only evidence which refuted the defense's theory. For example, the presence of spermatozoa on the anal swab and the doctor's testimony were inconsistent with the theory that no completed act of sexual assault occurred.

We find that, even without the child's videotaped statements, the jury had an ample basis for finding Vigil guilty of sexual assault on a child; therefore, the error did not cast serious doubt on the reliability of the judgment of conviction. Accordingly, we hold that admission of the videotaped police interview did not constitute plain error.

### IV. Voluntary Intoxication Jury Instruction

■ Vigil's final argument is that the trial court erred in instructing the jury that "intoxication of the accused is not a defense to a criminal charge." The court of appeals agreed with this argument. *See Vigil,* 104 P.3d at 267. We, however, disagree and uphold the trial court's instruction.

■ The criminal code provides that

[i]ntoxication of the accused is not a defense to a criminal charge ... but in any prosecution for an offense, evidence of intoxication of the defendant may be offered by the defendant when it is relevant to negative the existence of a specific intent if such intent is an element of the crime charged.

§ 18–1–804(1), C.R.S. (2005).[10] Under this provision, voluntary intoxication is a defense

---

*sua sponte")* (internal quotation omitted); *Collins v. State,* 164 Md.App. 582, 884 A.2d 181, 193–94 (Spec.App.2005) (finding that the defendant did not preserve his Confrontation Clause claim for review where defendant objected at trial that the videotaped testimony of a child sexual assault victim did not meet the particularized guarantees of trustworthiness required by the state's "tender years" hearsay exception); *United States v. Kappell,* 418 F.3d 550, 554 (6th Cir.2005) ("Since [the defendant] did not raise a Confrontation Clause argument in the district court, we review the issue (even though it is constitutional) for plain error."); *United States v. Holmes,* 406 F.3d 337, 347 (5th Cir.2005) (reviewing defendant's Confrontation Clause claim

for plain error where the defendant did not object to the admission of co-conspirator's deposition testimony at trial); *State v. Gomez,* 163 S.W.3d 632, 645 (Tenn.2005) (applying plain error review to a defendant's Confrontation Clause claim where the defendant failed to preserve the issue below).

10. The statutory provisions relevant to this portion of the opinion have not changed in any way that is relevant to our analysis from the date of the commission of the offense (February 2001) to the time of this writing. Therefore, for ease of reference, we cite to the 2005 edition of the criminal code rather than the 2001 edition.

to specific-intent crimes, but not to general-intent crimes. *See People v. Low*, 732 P.2d 622, 628 (Colo.1987); *People v. Aragon*, 653 P.2d 715, 719 (Colo.1982). Thus, Vigil was entitled to an intoxication instruction only if the legislature has designated sexual assault on a child as a specific-intent crime.

This question requires us to resolve an ambiguity in the code's delineation of the offense of sexual assault on a child. The definition of the offense is found in two sections of the code. Section 18–3–405(1), C.R.S. (2005), provides that "[a]ny actor who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child if the victim is less than fifteen years of age and the actor is at least four years older than the victim." "Sexual contact" is defined in section 18–3–401(4) as "the knowing touching of the victim's intimate parts by the actor ... if that sexual contact is for the purposes of sexual arousal, gratification, or abuse."

The ambiguity arises from the use of the words "knowingly" and "knowing" in sections 18–3–405(1) and 18–3–401(4), which indicates that sexual assault on a child is a general-intent crime, and section 18–3–401(4)'s requirement that the sexual touching be "for the purposes of sexual arousal, gratification, or abuse," which suggests that the offense requires specific intent. Vigil argues, and the court of appeals agreed, that section 18–3–401(4)'s use of the term "for the purposes of" demonstrates a legislative intent to make sexual assault on a child a specific-intent crime. Our review of the code, however, leads us to the conclusion that sexual assault on a child is a general-intent crime.

 Our primary task in construing a statute is to ascertain and give effect to the legislature's intent in promulgating the statute. *People v. Schuett*, 833 P.2d 44, 47 (Colo. 1992). When the statute is clear and unambiguous on its face, we need not look beyond the plain language. *Farmers Ins. Exchange v. Bill Boom Inc.*, 961 P.2d 465, 469–70 (Colo. 1998). However, where, as is the case here,

the statutory language is ambiguous, we may look to other factors, including the underlying purpose of the statute and its legislative history. *People v. Yascavage*, 101 P.3d 1090, 1093 (Colo.2004).

In 1971, the General Assembly enacted a complete revision of the criminal code, drawing heavily from the recently drafted Model Penal Code. *See People v. Hall*, 999 P.2d 207, 216–17 (Colo.2000); Marianne Wesson, *Mens Rea and the Colorado Criminal Code*, 52 U. Colo. L.Rev. 167, 172 (1981). At the time of the revision, the mental-state requirements for criminal offenses were defined by a wide array of ambiguous terms, such as "general criminal intent," "mens rea," "presumed intent," "malice," "willfulness," and "scienter." *See Model Penal Code* § 2.02 cmt. (Official Draft and Revised Comments 1985); *Hall*, 999 P.2d at 216–17. A primary goal of both the Model Penal Code and the Colorado revision was to eliminate the confusion created by these varied and ambiguous terms. *See Hall*, 999 P.2d at 216–17. To this end, the General Assembly replaced these terms with four "culpable mental states"-intentionally, recklessly, knowingly, and criminally negligent-and provided a definition for each. *See* § 18–1–501(3)–(6), (8), C.R.S. (2005).[11]

 The code's definitions of "intentionally" and "knowingly" provide a strong basis for concluding that the General Assembly intended sexual assault on a child to be a general-intent crime. The code provides that "[a]ll offenses defined in this code in which the mental culpability requirement is expressed as 'intentionally' or 'with intent' are declared to be specific intent offenses," § 18–1–501(5), C.R.S. (2005), and that "[a]ll offenses ... in which the mental culpability requirement is expressed as 'knowingly' or 'willfully' are declared to be general intent crimes," *id.* § 18–1–501(6). In light of these definitions, it is reasonable to conclude that, in using the word "knowingly" rather than "intentionally" in the definition of sexual assault on a child, the General Assembly in-

---

11. In creating four mental states, the Colorado code substantially follows the example of the Model Penal Code. One notable difference between the two codes is that the Model Penal

Code uses the word "purpose" where the Colorado code uses "intent." *See* Wesson, *supra*, 52 U. Colo. L.Rev. at 172.

tended this offense to be a general-intent one.

This conclusion finds support in the legislative history of the offense, which reveals two efforts by the General Assembly to ensure that Colorado courts would treat sexual assault on a child as a general-intent offense. The first effort occurred in 1977, when the General Assembly inserted the word "knowingly" into the definition of sexual assault on a child. *See* ch. 224, sec. 18, § 18–3–405, 1977 Colo. Sess. Laws 962. This change was part of a broader legislative effort to ensure that crimes which were well-embedded in Colorado law as general-intent crimes before the 1971 revision would continue to be treated as such by the Colorado courts. Hearing on H.B. 1654, sec. 18 Before the House Judiciary Committee, 51st Gen. Assem. of Colo. (1977) (statement of Otto O. Moore, former Chief Justice, Supreme Court of Colorado) (audio recording) (hereinafter "Hearing on H.B. 1654").

The legislation was prompted in part by a decision of this court holding that second-degree murder, which, after the 1971 revision, required that the offender act "intentionally" or "with intent," was a specific-intent crime to which voluntary intoxication was a defense. *See People v. Cornelison*, 192 Colo. 337, 340, 559 P.2d 1102, 1105 (1977). After this decision, the General Assembly substituted the word "knowingly" for "intentionally" in the definitions of second-degree murder and roughly two dozen other offenses. *See* ch. 224, 1977 Colo. Sess. Laws pp. 959 et seq. The General Assembly also inserted the word "knowingly" into the definitions of several offenses-including sexual assault and sexual assault on a child-whose definitions did not specify a mental-state requirement. *See* ch. 224, sec. 15–18, §§ 18–3–402–405, 1977 Colo. Sess. Laws 962. The intended effect of the legislation was aptly summarized by testimony before the House Judiciary Committee, where the amendment was first proposed:

[I]f we use the word "intentionally" or "with intent," [ ] the legislature declares that statute to be a specific-intent crime and that removes the debate as to what the level of mental culpability is. When we use the word "knowingly," the amendment says that the legislature declared that statute to be a general-intent crime and again we remove the debate.

Hearing on H.B. 1654 (statement of Henry Nieto, Assistant District Attorney for Jefferson County, Colorado). Thus, in inserting the word "knowingly" in the definition of the offense of sexual assault on a child, the General Assembly's purpose was to make the offense one of general intent.

In 1983, the General Assembly again demonstrated its intent to make sexual assault on a child a general-intent crime, this time by amending the definition of "sexual contact." At the time of this amendment, "sexual contact" was defined as "the *intentional* touching of the victim's intimate parts . . . ." *See* § 18–3–401(4), C.R.S.1973, 1978 Repl. Vol. (emphasis added). The 1983 amendment substituted the word "knowingly" for "intentional" in this definition. Ch. 198, sec. 1, § 18–3–401(4), 1983 Colo. Sess. Laws 697.[12] One of the sponsors of this legislation, Representative Kopel, described the purpose of the amendment to the House Judiciary Committee. *See* Hearing on H.B. 1101 Before the House Judiciary Committee, 57th Gen. Assem. of Colo. (1983) (Statement of Representative Kopel) (audio recording) (hereinafter "House Hearing on H.B. 1101"). Representative Kopel explained that the amendment was necessary "because of a conflict that occurs in the statute on sexual assault between the definition section and the crime section." *Id.* According to Representative Kopel, section 18–3–401(4)'s use of the word "intentional" was inconsistent with the General Assembly's 1977 effort to clarify that sexual assault is a general-intent crime. *Id; see also* Hearing on H.B. 1101 Before the Senate Judiciary Committee, 57th Gen. Assem. of Colo. (1983) (Statement of Repre-

---

**12.** By replacing the adjective "intentional" with the adverb "knowingly," the General Assembly inadvertently made section 18–3–401(4) grammatically incorrect. *See* ch. 198, sec. 1, § 18–3–401(4), 1983 Colo. Sess. Laws 697 (defining sex-

ual contact as "the knowingly touching of the victim's intimate parts . . . ."). The General Assembly corrected this error in 1993 by replacing "knowingly" with "knowing." *See* Ch. 292, sec. 15, § 18–3–401(4), 1993 Colo. Sess. Laws 1731.

sentative Kopel) (audio recording). Representative Kopel's proposed amendment, which was later signed into law, was intended to reconcile the conflict by making the definition of "sexual contact" consistent with the general-intent nature of sexual offenses. House Hearing on H.B. 1101.[13]

To summarize, the legislative history of the offense of sexual assault on a child, as described above, demonstrates that when the General Assembly inserted the word "knowingly" into the definition of the offense and the word "knowing" into the definition of "sexual contact," its intent was to provide a mental-state requirement of general intent. Therefore, the trial court properly instructed the jury that the defense of intoxication was not available to Vigil.

Before moving on, we find it necessary to address the reasoning behind the court of appeals' conclusion that sexual assault on a child is a specific-intent crime. The court based its conclusion on language from two decisions of this court, *People v. West*, 724 P.2d 623 (Colo.1986), and *People v. Moore*, 877 P.2d 840 (Colo.1994). In *West*, we considered a void-for-vagueness challenge to the pre–1983 version of section 18–3–401(4), which defined "sexual contact" as "the intentional touching of the victim's intimate parts by the actor ... if that sexual contact can reasonably be construed as being for the purposes of sexual arousal, gratification, or abuse." § 18–3–401(4), C.R.S. (1978). The defendant argued that, in including in the definition of "sexual contact" touching that "can reasonably be construed as being for the purposes of sexual arousal, gratification,

or abuse," the statute permitted a defendant to be convicted of sexual assault on a child on less than proof beyond a reasonable doubt. *West*, 724 P.2d at 627. We rejected this argument, concluding that sexual contact was "a specific intent type of criminal conduct" and that the statute required proof of the sexual purpose of the defendant's conduct beyond a reasonable doubt. *Id.* at 627–28.

In a footnote to our opinion in *West*, we noted the 1983 amendment's changing of the definition of sexual contact from "the intentional touching of the victim's intimate parts" to "the knowing touching of the victim's intimate parts." *See West*, 724 P.2d at 629 n. 4 (emphasis added). Although the amended version of the statute was not before us, we stated that "we discern no basis in the 1983 amendment to construe the term 'can reasonably be construed' in a ·manner different from the construction adopted in this opinion." *Id.*

Six years later, in *Moore*, we construed the 1983 version of section 18–3–401(4), and. we revisited the statements we made in *West* concerning that section. The defendant in *Moore* forced his wife to sexually abuse their twelve-year-old daughter and was found guilty of sexual assault on a child based on a complicity theory. 877 P.2d at 841–42. The defendant challenged his conviction, arguing that his wife did not have the culpable mental state required for the commission of sexual assault on a child and that, for this reason, he could not be convicted of being an accomplice to the crime. *Id.* at 847. We rejected this argument, concluding that the defendant's

---

**13.** In describing the amendment to the House Committee, Representative Kopel did not talk specifically about the offense of sexual assault on a child. Instead, he described a hypothetical case that concerned a man who touches a woman's buttocks on a public bus. At the time of the hearing, this hypothetical fact pattern would apparently have fallen under the definition of third-degree sexual assault, an offense that is currently labeled "unlawful sexual contact." *See* § 18–3–404, C.R.S. (2005). The offense of third-degree sexual assault prohibited "sexual contact" in certain circumstances. *See* § 18–3–404, C.R.S. 1973, 1978 Repl.Vol. Thus, like the then-existing and current versions of the crime of sexual assault on a child, the description of third-degree sexual assault referred to the definition of "sexual contact." Noting that it is more difficult for

the prosecution to prove specific intent than general intent, Representative Kopel explained to the Committee that replacing "intentional" with "knowing" would facilitate prosecution of third-degree sexual assault. In light of the legislature's 1977 effort to clarify that sexual assault on a child is a general-intent crime, we are persuaded that the General Assembly was well aware that the amendment to the definition of "sexual contact" modified not only the offense of third-degree sexual assault, but also the offense of sexual assault on a child. *See Farmers Ins. Exchange v. Bill Boom Inc.*, 961 P.2d 465, 470 (Colo.1998) (observing that "the textual context" and "the state of the law prior to the legislative enactment" are relevant to determining legislative intent).

wife did act with the requisite mental state, as she touched her daughter's intimate parts "for the purpose of [the defendant's] sexual arousal or gratification, or for his abuse of the child." *Id.* In coming to this conclusion, we cited to *West* for the proposition that "the culpable mental state required for the commission of sexual assault on a child is knowing touching that is specifically intended to be for the purposes of sexual arousal, gratification, or abuse." *Id.*

In neither *West* nor *Moore* did we address the question presented by the instant case: whether voluntary intoxication is a defense to the crime of sexual assault on a child. Moreover, our statements in *West* and *Moore* regarding the mental state required by section 18–3–401(4) were dicta, as they were not essential to the holdings of the cases. In *West*, we reviewed a conviction under a previous version of section 18–3–401(4) that defined "sexual contact" in terms of "intentional touching," and only commented upon the 1983 version in a footnote. *See West*, 724 P.2d at 629 n. 4. In *Moore*, we considered whether accomplice liability could lie where the defendant forced his wife to commit sexual assault. *See Moore*, 877 P.2d at 846. The question of whether sexual assault on a child is a general- or specific-intent crime was not before the court, as the defendant did not offer an intoxication defense and his wife would have had the required mental state whether that mental state was specific intent or general intent.[14]

To the extent that *West* or *Moore* could be read to impose a requirement of specific intent for the offense of sexual assault on a child, such a reading would be inconsistent with the clear intent of the legislature as we have described that intent today. After today's opinion, it should be clear that sexual assault on a child is a general-intent crime to which voluntary intoxication is not a defense.

## V. Conclusion

For the reasons stated above, we reject the challenges to Vigil's conviction for sexual assault on a child. Regarding the constitutional claims, we conclude first that *Crawford* does not require Vigil to have had a prior opportunity to cross-examine the child because the child's statements to his father, his father's friend, and the doctor were not testimonial. Second, we conclude that the statements satisfied the requirements of *Roberts* and *Dement.* Therefore, admission of the statements did not violate Vigil's right to confront witnesses under the United States and Colorado Constitutions.

Concerning the child's testimonial statements in the videotaped police interview, Vigil did not object to their admission on Confrontation Clause grounds, and the trial court did not commit plain error in admitting the testimonial statements. Accordingly, the admission of the child's statements from the videotaped police interview does not require reversal.

Finally, the trial court did not err by refusing to provide the jury with a voluntary intoxication instruction because sexual assault on a child is a general-intent crime to which voluntary intoxication is not a defense.

Thus, we reverse in part and affirm in part the decision of the court of appeals and reinstate Vigil's conviction.

Justice BENDER concurs in part and dissents in part, and Justice MARTINEZ joins in the concurrence and dissent.

Justice COATS specially concurs.

Justice BENDER, concurring in part and dissenting in part.

The majority reverses the holding of the court of appeals, holding, in part, that statements the child made to the doctor during the forensic examination were not testimonial and were therefore admissible even though Vigil did not have the opportunity to cross-examine the child. In *Crawford v. Washington*, the United States Supreme Court recognized several formulations of the term "testimonial." 541 U.S. 36, 124 S.Ct. 1354, 158

---

**14.** Section 18–1–503(3), C.R.S. (2005) provides that "[i]f acting knowingly suffices to establish an element, that element also is established if a person acts intentionally." Because the court concluded that the defendant's wife acted intentionally, the court had no reason to consider whether the statute required a mental state of intentionally or knowingly.

L.Ed.2d 177 (2004). Testimonial statements include statements made when a person acting for the government was involved in producing the statement with the intent to develop testimony for trial. *See Id.* at 56 n. 7, 124 S.Ct. 1354. *Crawford* implied that testimonial statements also include statements made under circumstances that would lead an objective witness to reasonably believe that the statement would be available for use in a trial. *Id.* at 52, 124 S.Ct. 1354. I believe the child's statements to the doctor were testimonial under both of these constructions. Applying *Crawford*'s test, the child's statements to the doctor were testimonial because the lead police officer orchestrated the forensic examination which the doctor performed solely for the purpose of gathering evidence for use at a later trial. Additionally, the majority modifies the third of *Crawford*'s three formulations of the "core class" of testimonial statements by adding the words "in the position of the declarant." The majority's test shifts the focus from an objective appraisal of the circumstances surrounding the questioning to a declarant-centered inquiry and in so doing contravenes *Crawford*'s rationale that the historical concern of the Confrontation Clause is to prohibit testimony without the benefit of cross-examination which is produced with the involvement of government officers with an eye toward trial. *Crawford,* 541 U.S. at 56, n. 7, 124 S.Ct. 1354. Thus, I would affirm the ruling of the court of appeals on this point, and I respectfully dissent as to Section II.1 of the majority opinion and concur as to the remainder of the majority opinion.

## The Functional Equivalent of Police Interrogation

As a preliminary matter, I disagree with the majority's conclusion that a court must first determine "whether there was a police interrogation" and only after finding no police interrogation analyze whether the statement falls into the "core class" of testimonial statements. Maj. Op. at 923 n. 5. In its attempt to define "testimonial," *Crawford* discusses three formulations of the "core class" of testimonial statements and declines to adopt a precise definition. *Crawford,* 541 U.S. at 51–52, 124 S.Ct. 1354. Next, *Craw-*

*ford* recognizes that "even under a narrow standard," the term "testimonial" encompasses statements taken during police interrogations. *Id.* at 52, 124 S.Ct. 1354. Thus, I conclude that police interrogations do not exist as a separate class of testimonial statements distinct from the formulations of the "core class." Instead, like ex parte testimony at a preliminary hearing, statements taken during police interrogation are always testimonial, even under the narrowest articulation of the "core class" of testimonial statements. *Crawford*'s "core class" discussion informs the Court's understanding of the term "testimonial" throughout the opinion and underscores *Crawford*'s concern with governmental participation in the production of testimony for trial.

Although I disagree with the distinction the majority draws between police interrogation and the "core class" of testimonial statements, I agree with the factors the majority applies to determine whether a statement is testimonial under the theory that it constitutes the functional equivalent of police interrogation. *See* Maj. Op. at 922 (discussing whether the doctor's questioning "constituted the functional equivalent of police interrogation" and whether its purpose was "to develop testimony for trial"). I disagree with the majority's application of these factors and would hold that the doctor's questioning did constitute the functional equivalent of police interrogation and that the doctor acted at the request of the police with the primary purpose of examining the child to preserve testimony for trial. Therefore, the statements elicited by the doctor were testimonial, and, pursuant to *Crawford,* they could not be admitted without Vigil having the opportunity to cross examine the child. *Crawford,* 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

In my view, the police officer was inextricably involved in the doctor's examination of the child and the circumstances surrounding the examination show that its primary purpose was to help the police gather evidence to prosecute Mr. Vigil. The lead investigating officer drove the child to the hospital and assisted the mother in signing the child in and filling out the hospital paperwork. Be-

fore the doctor conducted the forensic exam, this officer spoke with him about the background of her sexual assault investigation. At this time, the police had identified Mr. Vigil as a suspect and were working to build a sexual assault case against him. After providing the doctor with the background of the case, this officer gave him a Colorado Sexual Assault Evidence Collection Kit and asked the doctor to examine the child. Upon completion of this forensic exam, the doctor immediately sealed the exam and handed it to the officer who immediately took it to the police station and entered it into evidence. Hence, the circumstances surrounding the forensic examination imply direct police involvement and demonstrate that the purpose of the exam was to secure evidence for the prosecution of Mr. Vigil.

The facts of this case also demonstrate that the doctor acted on behalf of the police when he administered the forensic exam and that he administered it not for medical treatment, but to preserve evidence in anticipation of a criminal trial. The doctor has a history of testifying as an expert witness, having appeared in hundreds of child sexual assault trials. On the night of the incident, he met with the child to "perform a forensic sexual abuse examination" to look for evidence of sexual abuse. The doctor administered the Colorado Sexual Assault Evidence Collection Kit, a forensic exam that is administered as standard protocol in cases of alleged sexual abuse. The doctor testified that he administered the exam "in part [to find] physical corroboration [of the child's statements] as well as [to gather] laboratory or forensic evidence." Specifically, the doctor administered the exam to "test for the presence of semen, sperm, and acid phosphatases or other types of forensic evidence." Black's Law Dictionary defines "forensic" as "[u]sed in or suitable to courts of law or public debate." *Black's Law Dictionary* 578 (7th ed.1999). One purpose of this forensic exam was to detect and collect spermazoa for the Colorado Bureau of Investigation to analyze as part of the police investigation. The doctor never met with or examined the child after the night that he administered the forensic exam. These facts demonstrate that the doctor's purpose in administering the

forensic exam was not to treat the child, but to gather and preserve evidence for trial and to help the police conduct their criminal investigation of Mr. Vigil. That this was the purpose of the doctor's examination is established by the trial court finding of fact that the doctor's "examination was for the purpose of establishing an expert opinion" and "not for treatment purposes."

The Eighth Circuit Court of Appeals decision in *United States v. Bordeaux* is instructive in this case. 400 F.3d 548 (8th Cir.2005). In *Bordeaux*, the court held that statements a child victim made to a forensic interviewer were testimonial, citing "the formality of the questioning and the government involvement in it." *Id.* at 556. The court reasoned that the purpose of the forensic interview "was to collect information for law enforcement." *Id.* The court added that even if the statements had some medical purpose, this "does not change the fact that they were testimonial, because *Crawford* does not indicate, and logic does not dictate, that multi-purpose statements cannot be testimonial." *Id.*

In addition to comparing the facts of this case to cases from other jurisdictions, the majority points to two arguments to support its conclusion that the statements the child made to the doctor do not constitute the functional equivalent of police interrogation. First, the majority suggests that admitting the child's statements would not violate Mr. Vigil's right to confrontation because the trial court found the statements admissible under the Colorado Rules of Evidence hearsay exception for statements made for the purpose of medical diagnosis and treatment. Second, the majority infers from *Crawford*'s reference to *White v. Illinois* that the statements the child sexual assault victim made to police in *White* were testimonial while the statements she later made to a doctor were nontestimonial. I find neither argument persuasive.

The majority argues that the factors the trial court considered in its medical diagnosis and treatment hearsay analysis are relevant to a Confrontation Clause analysis. Maj. Op.

at 924–925.[1] In my view, this reasoning blurs the distinction between these two doctrines and mistakenly concludes that the forensic exam was for medical purposes. One point *Crawford* makes clear is that the Court's former reliance on a firmly rooted hearsay exception justification to find Confrontation Clause compliance is no longer the rule. The Court expressly dismissed this approach in *Crawford:*

> Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence.

*Crawford,* 541 U.S. at 61, 124 S.Ct. 1354. The *Crawford* Court added that the necessity of the Confrontation Clause "does not evaporate when testimony happens to fall within some broad, modern hearsay exception, even if that exception might be justifiable in other circumstances." *Id.* at 56 n. 7, 124 S.Ct. 1354. Thus, the majority's reliance on the medical diagnosis and treatment hearsay doctrine appears to contradict *Crawford*'s express rejection of the firmly rooted hearsay exception approach to Confrontation Clause analysis.

In addition to conflicting with *Crawford,* the majority's reliance on the trial court's hearsay exception analysis results in a conclusion at odds with the trial court's express finding that the doctor performed the forensic examination for law enforcement rather than medical purposes. That court found that the doctor was not "a treating physician" and that the doctor's exam was "not for treatment purposes." Rather, the doctor's "examination was for the purpose of establishing an expert opinion." The trial court's conclusion that these statements were nonetheless admissible pursuant to a hearsay exception is not relevant to a Confrontation Clause analysis. The majority's reliance on the trial court's hearsay analysis appears unjustified.

Turning to the majority's argument concerning *White v. Illinois, Crawford*'s impli-

cation in a footnote that the child's statement to police in *White* was testimonial addressed neither the question of whether that child's statements to a treating physician were testimonial nor whether the child's statements to police in the present case were testimonial. *See* Maj. Op. at 922 n. 4. Hence, I disagree with the majority's reliance on *Crawford*'s reference to *White* and with the conclusions the majority draws regarding intentions of the *Crawford* court.

Because I conclude, as the trial court did, that the doctor examined the child as part of the police investigation and with the purpose of preserving evidence and testimony for trial, the statements he elicited from the child were testimonial and therefore not admissible without the accused having the opportunity to cross examine the child-declarant.

**The Majority's "Objective Witness Test"**

I also disagree with the majority's application of the third of the three formulations of the "core class" of testimonial statements discussed in *Crawford.* To apply this formulation correctly, I suggest that it must be understood in the context of *Crawford*'s Confrontation Clause analysis.

The purpose of the Confrontation Clause reflects the purpose of the Bill of Rights generally: to limit the power of the government when an individual's liberty is at stake. *See Hamdi v. Rumsfeld,* 542 U.S. 507, 571, n. 4, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004) (Scalia, J., dissenting) (noting that "the whole point of the procedural guarantees in the Bill of Rights is to limit the methods by which the Government can determine facts that the citizen disputes and on which the citizen's liberty depends"). To determine what governmental powers the Clause was meant to curtail, *Crawford* traced the history of the Confrontation Clause from Roman times through sixteenth century England and colonial America to the First Congress of the United States which drafted the proposal that became the Sixth Amendment. *Craw-*

---

1. The majority reasons that:
 the same factors that led the trial court to rule that the child's statements to the doctor were admissible as statements for the purpose of medical diagnosis and treatment under CRE 803(4) are helpful to our determination that the doctor did not purport to develop testimony for trial but rather intended to gather information in order to reach a medical diagnosis. Maj. Op. at 924–925.

*ford,* 541 U.S. at 43–49, 124 S.Ct. 1354. Citing Sir Walter Raleigh's demand at his trial "let Cobham be here, let him speak it. Call my accuser before my face," the Court reasoned that "the principal evil at which the Confrontation Clause was directed was ... [the] use of *ex parte* examinations as evidence against the accused." *Crawford,* 541 U.S. at 50, 124 S.Ct. 1354. The Court concluded that the founding fathers intended the Confrontation Clause to secure the right of cross-examination of witnesses bearing testimonial evidence against the accused. *Id.* at 51, 124 S.Ct. 1354. The Confrontation Clause prohibits the government from introducing testimony when the government participates in some way to produce testimony with an eye toward trial where the defendant does not have the opportunity to cross examine the declarant-witness.

The majority's interpretation of the third of *Crawford's* three formulations of "testimonial" focuses on the characteristics of the witness. This construction conflicts with the fundamental purpose of the Bill of Rights which serves to protect the rights of individuals when infringed upon by governmental action. Specifically, the Sixth Amendment right of confrontation protects the rights of the accused in the context of a criminal trial. Therefore, the nature of the right protected by the Confrontation Clause does not turn on the characteristics of the witness but on the action of the government that orchestrates and produces trial testimony in the absence of cross-examination.

As noted, *Crawford* declined to define explicitly the term "testimonial." *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354. "Testimony," according to Wigmore, is *"[a]ny* assertion, taken as the basis of an inference to the existence of the matter asserted... whether made in court or not." 2 John H. Wigmore, Evidence § 479 (Chadbourn rev. 1979) (emphasis in original). *Crawford* concerns a subset of this general definition of testimony—testimonial evidence which the Confrontation Clause historically intended to prohibit. The *Crawford* Court's extensive discussion of the history of the Confrontation Clause led it to recognize certain statements that are always testimonial under its use of the term and others that always are not. For instance, ex parte testimony at a preliminary hearing, statements taken during interrogations by law enforcement officers, and prior testimony at a preliminary hearing, before a grand jury, or at a former trial are testimonial under any formulation of the term. *Crawford,* 541 U.S. at 51, 68, 124 S.Ct. 1354. Conversely, an "off-hand, overheard remark" is not a statement that the Framers intended the Confrontation Clause to exclude. *Id.* at 51, 124 S.Ct. 1354.

But the *Crawford* Court did not limit its definition of the term "testimonial" to these formal categories of statements. Rather, the Court recognized that "the unpardonable vice of the Roberts test ... [was] its demonstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude." *Id.* at 62, 124 S.Ct. 1354. While it held that the term "testimonial" applies "at a minimum" to certain types of formal statements, the Court recognized three formulations of what it called the "core class" of testimonial statements that broaden this narrow standard to define the "Clause's coverage at various levels of abstraction." *Id.* at 52, 124 S.Ct. 1354.

All three formulations possess the common thread that runs through this "core class" of testimonial statements: a concern with the "involvement of government officers in the production of testimony with an eye toward trial." *Id.* at 56 n. 7, 124 S.Ct. 1354. The three formulations include: (1) *"ex parte in-court testimony or its functional equivalent—*that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"; (2) "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; and (3) *"statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."* *Crawford,* 541 U.S. at 52, 124 S.Ct. 1354 (internal citations omitted) (emphasis added).

Each of *Crawford*'s three formulations of the "core class" of testimonial statements defines testimonial evidence "at various levels of abstraction." *Id.* The second formulation of the "core class" includes specific categories of formal statements that the Court recognized as testimonial under "even a narrow standard." *Id.* The first and third formulations of the "core class" go beyond the formal testimonial materials listed in the second formulation. The first formulation broadens the "narrow standard" by including not only ex parte testimony, but statements that are its "functional equivalent," and "similar pretrial statements" that objectively appear to have a prosecutorial purpose. *Id.* The third formulation looks to an objective appraisal of the circumstances surrounding the questioning to determine whether a statement is testimonial. Under this formulation, a statement is testimonial if it was taken under circumstances that, when viewed objectively, indicate that the statement would be "available for use at a later trial." *Id.*

The majority misconstrues the third formulation of the "core class" of testimonial statements. By referring to the third formulation as "the objective witness test," the majority shifts the focus from an objective determination of whether the circumstances surrounding the questioning indicate that the statements will be available for trial. Instead, use of the phrase "the objective witness test" implies a declarant-centered approach to determine whether a statement is testimonial. Based upon this declarant-centered approach, the majority discusses whether the objective witness "must be defined as an objectively reasonable adult observer educated in the law" or "an objectively reasonable person in the declarant's position." *See* Maj. Op. at 925. The majority reads the language "reasonable, objective witness" out of context to conclude that "the term 'reasonable, objective witness' refers to an objectively reasonable person in the declarant's position." *Id.* This additional language changes the focus of the third formulation of the "core class" of testimonial statements from an objective appraisal of the circumstances of the questioning to focus instead upon the expectations and cognitive abilities of the actual witness in the

case. This shift from an objective view of the circumstances of the out-of-court questioning to the cognitive abilities and subjective traits of the witness, contravenes the common thread of *Crawford*'s core class of testimonial statements which are produced with government involvement with an eye toward trial.

I find the reasoning of the Maryland Court of Appeals consistent with *Crawford*'s rationale and instructive. *See State v. Snowden,* 385 Md. 64, 867 A.2d 314, 329 (2005). That court interpreted the third formulation of the "core class" of testimonial statements to require an objective evaluation of the circumstances of the questioning and dismissed the "objective person the age of the declarant" standard, reasoning that the intentions underlying the questioning were relevant to the analysis, not only what a witness the victim's age would reasonably know or expect:

> The formulations in *Crawford* outlining what is testimonial not only take into account the intentions of the declarant, but also look to the intentions of the person eliciting the statement... To allow the prosecution to utilize statements by a young child made in an environment and under circumstances in which the investigators clearly contemplated use of the statements at a later trial would create an exception that we are not prepared to recognize. Thus, we are satisfied that an objective test, using an objective person, rather than an objective child of that age, is the appropriate test for determining whether a statement is testimonial in nature.

*Id.* Hence, the *Snowden* court recognized that the third of the three formulations of the "core class" of testimonial statements is not meant to inquire about the mental capabilities or understanding of the witness, but instead to evaluate objectively the circumstances surrounding the questioning.

The majority's reliance on *Dutton* illustrates a practical problem with introducing subjective elements into what *Crawford* envisions as an objective test. *See* Maj. Op. at 925. The majority concludes that an "objectively reasonable person *in the declarant's*

*position*" in *Dutton* would not have foreseen the prosecution using the statement in court, while an "objectively reasonable observer *educated in the law* might have foreseen" this use. Maj. Op. at 925 nn. 6, 7 (emphasis added). Once subjective qualifying language, such as "in the declarant's position," or "educated in the law," is introduced to this formulation of testimonial evidence, as with any subjective test, the lines become difficult, if not impossible to draw uniformly. Different courts could emphasize different facts about the witness to reach different conclusions regarding how he might act. For instance, one court may emphasize a child's age and find, as the majority does, that the statements of "an objective seven-year-old" are not testimonial and another court may emphasize his experience and reach the opposite conclusion. Maj. Op. at 926. In contrast, an objective assessment of the entire circumstances surrounding the questioning is consistent with and supports the objective nature of the third formulation of the "core class" of testimonial statements recognized in *Crawford.* This approach promotes uniformity and is not subject to the various interpretive choices available under the majority's "objective witness test" formulation.

Returning to the "statements that were made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" formulation of the "core class" of testimonial statements, I conclude that an objective witness would have reasonably known that statements made during a forensic exam would be available later in a criminal trial. The facts demonstrate that the police brought the child to the doctor in a police car, helped the child's mother sign him in to the hospital, and asked the doctor to perform a forensic exam to build their case against Vigil. An objective witness would reasonably know that the doctor was engaged in gathering evidence for the police and would expect his statements to the doc-

tor to be used—at least in part—to prosecute Vigil.

The majority misconstrues *Crawford* by adding a subjective element to what Crawford envisions as a standard requiring an objective assessment of circumstances surrounding the questioning. I would apply the standard announced in *Crawford* to hold that an objective witness would reasonably believe that the statements he made to the doctor obtained under these circumstances would be used to prosecute Mr. Vigil, and that therefore, these statements were testimonial and could not be admitted unless the accused, Vigil, had the opportunity to cross-examine this witness. Hence, I respectfully dissent.

I am authorized to state that Justice Martinez joins in this concurrence and dissent.

Justice COATS, specially concurring.

I concur in the majority opinion, noting only (as I have done in the past, *see Compan v. People,* 121 P.3d 876, 886 (Colo.2005) (Coats, J., specially concurring)) that I understand the majority to intend, with regard to the state constitution, only that if the admissibility of non-testimonial hearsay were contingent upon the unavailability of the declarant, such a requirement would present no impediment to admission in this case. *See* maj. op. at 927, 929. Although I think it clear that we have never found the state constitution to impose an unavailability requirement beyond that of the Sixth Amendment Confrontation Clause, the declarant's clear unavailability here renders such a determination unnecessary to the resolution of the case before us.